**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CSB-SYSTEM INTERNATIONAL INC., <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> SAP AMERICA, INC., <br><br> Defendant/Counterclaim Plaintiff. | Civil Action No. 10-CV-2156 - RB |

**SAP AMERICA, INC.'S ANSWER AND COUNTERCLAIMS
TO CSB-SYSTEM INTERNATIONAL INC.'S COMPLAINT**

SAP America, Inc. ("SAP"), by and through its undersigned counsel, hereby submits its answer and affirmative defenses to the Complaint filed by CSB-System International Inc. ("CSB"), in accordance with the numbered paragraphs thereof, as well as its counterclaims against CSB, and states as follows:

**NATURE OF THE ACTION**

1.      SAP admits only that paragraph 1 of the Complaint purports to state an action for patent infringement under the Patent Laws seeking damages and injunctive relief thereunder. Otherwise denied.

**THE PARTIES**

2.      SAP is without knowledge or sufficient information to form a belief as to the truth of the allegations of paragraph 2 of the Complaint and therefore denies the same.

3.      SAP admits the allegations set forth in paragraph 3 of the Complaint, with the exception of an apparent typographic error in that the zip code of SAP's place of business in Newtown Square is 19073.

## JURISDICTION AND VENUE

4.      SAP admits the allegations set forth in paragraph 4 of the Complaint.

5.      SAP admits that this Court has personal jurisdiction over SAP, that SAP is licensed to do business in the Commonwealth of Pennsylvania, and that SAP sells and offers for sale in Pennsylvania software for use in certain types of computers, including computers that may be used for electronic data interchange and customer relationship management. Otherwise denied.

6.      SAP admits allegations set forth in paragraph 6 of the Complaint.

## FACTUAL ALLEGATIONS

7.       SAP is without knowledge or sufficient information to form a belief as to the truth of the allegations of paragraph 7 of the Complaint and therefore denies the same.

8.      SAP admits only that Exhibit 1 purports to be a copy of U.S. Patent No. 5,631,953 alleged to have issued on May 20, 1997, by the United States Patent & Trademark Office ("the 953 patent"), and that Exhibit 1 is entitled Circuit Arrangement for Integration of EDP Systems in the Utilization of Telephone Systems.  Otherwise denied.

9.      SAP is without knowledge or sufficient information to form a belief as to the truth of the allegations of paragraph 9 of the Complaint and therefore denies the same.

10.      SAP is without knowledge or sufficient information to form a belief as to the truth of the allegations of paragraph 10 of the Complaint and therefore denies the same.

11.      SAP admits only that the SAPphone module and the SAP Integrated Communication Interface ("ICI") have been sold and offered for sale in the United States. Otherwise denied.

12.      SAP is without knowledge or sufficient information to form a belief as to the truth of the allegations of paragraph 12 of the Complaint and therefore denies the same.

13.     SAP  is without knowledge or sufficient information to form a belief as to the truth of the allegations of paragraph 13 of the Complaint and therefore denies the same

14.     SAP admits only that patents are presumed to be valid and that invalidity must be proven by clear and convincing evidence.  SAP denies that the 953 patent is valid.

## ANSWER TO COUNT 1
## (PATENT INFRINGEMENT)

15.     SAP incorporates herein the responses as set forth in paragraphs 1 through 14 above.

16.     SAP denies the allegations set forth in paragraph 16 of the Complaint.

17.     SAP denies the allegations set forth in paragraph 17 of the Complaint.

18.     SAP denies the allegations set forth in paragraph 18 of the Complaint.

19.     SAP denies the allegations set forth in paragraph 19 of the Complaint.

## AFFIRMATIVE DEFENSES

SAP, without waiver, limitation, or prejudice, asserts the following defenses and reserves the right to amend its Answer as additional information becomes available.

## FIRST AFFIRMATIVE DEFENSE

20.     SAP has not infringed and does not infringe (directly or indirectly) any of the claims of the 953 patent, either literally or under the doctrine of equivalents.

## SECOND AFFIRMATIVE DEFENSE

21.     The European and German counterpart patents to the 953 patent, described hereinafter, have been declared invalid in Europe and in Germany.

22.     One or more claims of the 953 patent is invalid for failure to meet the requirements of the patent laws of the United States, including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

23.    SAP incorporates the allegations set forth in succeeding paragraphs 14 through 38 of the Counterclaim below as if fully set forth herein.

### THIRD AFFIRMATIVE DEFENSE

24.    The 953 patent is unenforceable due to inequitable conduct before the United States Patent and Trademark Office ("USPTO") during prosecution of the application for the 953 patent.

25.    SAP incorporates the allegations set forth in succeeding paragraphs 39 through 78 of the Counterclaim below as if fully set forth herein.

### FOURTH AFFIRMATIVE DEFENSE

26.    CSB's damages are reduced or barred due to its failure to properly mark products embodying the 953 patent pursuant to, *inter alia*, 35 U.S.C. § 287.

### FIFTH AFFIRMATIVE DEFENSE

27.    CSB's claim for damages is barred under the doctrine of laches. By way of example, but not limitation, and on information and belief, at least as early as 1998, CSB asserted that SAP infringed the 953 patent. CSB delayed twelve years in bringing this lawsuit. As a result of CSB's delay, substantial evidence relevant to the defense of CSB's infringement claim against SAP is no longer available since it has been destroyed during the period of delay, to the substantial detriment of SAP.

### SIXTH AFFIRMATIVE DEFENSE

28.    CSB's claims are barred, in whole or in part, under the doctrine of estoppel.  By way of example, but not limitation, and on information and belief, at least as early as 1998, CSB asserted that SAP infringed the 953 patent. CSB delayed twelve years in bringing this lawsuit. As a result of CSB's delay, substantial evidence relevant to the defense of CSB's infringement

claim against SAP is no longer available since it has been destroyed during the period of delay, to the substantial detriment of SAP.

## SEVENTH AFFIRMATIVE DEFENSE

29.     CSB's claims are barred, in whole or in part, under the doctrine of unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

30.     CSB's claims are barred, in whole or in part, by the doctrine of implied license.

## NINTH AFFIRMATIVE DEFENSE

31.     CSB's claims are barred, in whole or in part, by the doctrine of exhaustion.

## TENTH AFFIRMATIVE DEFENSE

32.     The Complaint fails to state a claim upon which relief can be granted.

## COUNTERCLAIMS

As and for its counterclaims against CSB-System International Inc. ("CSB"), Counterclaimant SAP America, Inc. ("SAP") respectfully states as follows:

1.     SAP is a corporation organized and existing under the laws of the State of Delaware, with its principal of business at 3999 West Chester Pike, Newtown Square, Pennsylvania 19073.

2.     CSB has alleged that it is a corporation organized and existing under the laws of the State of California.

3.     CSB commenced this civil action for infringement of U.S. Patent No. 5,631,953 ("the 953 patent") by filing a Complaint against SAP that alleges that SAP has infringed and continues to infringe the 953 patent.  CSB has created an actual and justiciable controversy between SAP and CSB concerning the non-infringement, invalidity, and unenforceability of the 953 patent.

## JURISDICTION AND VENUE

4.      SAP's counterclaim for a declaratory judgment of non-infringement, invalidity and unenforceability arises under the federal patent laws, Title 35 of the United States Code, and the Federal Declaratory Judgment Act.  This Court has jurisdiction over the declaratory judgment counterclaims pursuant to 28 U.S.C. §§ 2201-02, 1331 and 1338(a).

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

## GENERAL ALLEGATIONS

6.      CSB has alleged that it is the owner of the 953 patent.

7.      The 953 patent names as inventors Gottfried Thomas and Ulrich Mergemann.

8.      CSB has alleged that Exhibit 1 to its Complaint is a true copy of the 953 patent.

## COUNTERCLAIM I:
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT

9.      SAP incorporates the allegations set forth in all preceding paragraphs as if fully set forth herein.

10.     This counterclaim is for a declaratory judgment pursuant to 28 U.S.C. §§ 2201-02, 1331 and 1338(a).

11.     CSB has alleged that SAP has infringed and is infringing the 953 patent.

12.     SAP has not infringed (directly or indirectly) any claim of the 953 patent, either literally or under the doctrine of equivalents.

13.     SAP, therefore, is entitled to a declaratory judgment that it has not infringed and does not infringe (directly or indirectly) any claim of the 953 patent, either literally or under the doctrine of equivalents.

**COUNTERCLAIM II:**
**<u>DECLARATORY JUDGMENT OF INVALIDITY</u>**

14.     SAP incorporates the allegations set forth in all preceding paragraphs as if fully set forth herein.

15.     This counterclaim is for a declaratory judgment pursuant to 28 U.S.C. §§ 2201-02, 1331 and 1338(a).

16.     The European and German counterpart patents to the 953 patent, described hereinafter, have been declared invalid in Europe and in Germany.

17.     The claims of the 953 patent are invalid for failure to meet one or more of the requirements of the patent laws of the United States, including, but not limited to, 35 U.S.C. §§ 102, 103 and/or 112. Detailed bases for invalidity are set forth, in part, below.

**Invalidity Under 35 U.S.C. §§ 102 & 103**

18.     Paragraph nos. 19 through 38 are upon information and belief.

19.     The subject matter of the 953 patent, computer integrated telephony ("CIT"), dates back to at least the early 1980's. As described below, CIT systems of the type described and claimed in the 953 patent had been described in patents and publications that long pre-date the earliest filing date to which the 953 patent may be entitled. A common application of CIT was customer service centers. CIT allowed a customer service representative receiving a customer's call to identify the customer, retrieve the customer information, and display the customer information to the customer service representative.

20.     The prior art to the 953 patent, including, but not limited to "The Prior Art" described below, encompasses highly relevant prior art not considered by the U.S. Patent and Trademark Office ("USPTO") in the examination of the application leading to the 953 patent. In particular, the prior art to the 953 patent either identically describes the subject matter claimed in

the 953 patent, and hence renders it invalid under 35 U.S.C. § 102, and/or renders the subject

matter obvious, and hence invalid under 35 U.S.C. § 103.

**The Prior Art**

The IEEE Reference

21.     An article entitled, "Voice/Data Integration: An Applicants Perspective" ("IEEE

Reference") was published in the Institute of Electrical and Electronic Engineers (IEEE)

Communications Magazine on December 1987, and therefore is prior art to the 953 patent under

at least 35 U.S.C. § 102(b). The IEEE Reference describes a CIT system developed by Digital

Equipment Corporation.

22.     The 953 patent is invalid under 35 U.S.C. §§ 102 and/or 103 in view of the IEEE

Reference because the IEEE Reference teaches each of the elements of the claims of the 953

patent.  In particular, the IEEE Reference discloses a telephone system in combination with a

LAN and LAN server, including an intelligent interface. For example, the IEEE Reference

teaches telephone extensions, an intelligent telephone system (Switching Equipment), personal

computers (Workstation), an integration element (CIT Command Link Interface), which includes

a connection element and software layer, a LAN, and a LAN server (Application Database).  The

IEEE Reference therefore discloses the same configuration as shown in Figure 1 in the 953

patent, and teaches the "circuit arrangement" recited by the claims of the 953 patent.

The Heinzelmann Patent

23.     U.S. Patent No. 4,666,758 ("the Heinzelmann patent") entitled, "Phone

Management Server for Use with a Personal Computer LAN" was filed on October 31, 1988 and

issued on September 12, 1989; therefore, the Heinzelmann patent is prior art to the 953 patent

under at least 35 U.S.C. § 102(b). The Heinzelmann patent discloses integrating telephone and

- 8 -

computer functionality such that a computer can display caller information when a call is received.

24.     The 953 patent is invalid under 35 U.S.C. §§ 102 and/or 103 in view the Heinzelmann patent because the Heinzelmann patent teaches each of the elements of the claims of the 953 patent.  In particular, the Heinzelmann patent discloses a phone management server for use with a personal computer LAN.   For example, the Heinzelmann patent teaches telephone extensions ($23_{1-3}$), an intelligent telephone system (22), personal computers ($11_{1-3}$), an integration element (21), a connection element (26), a LAN (12), a computing system (21), and a software layer (21). The Heinzelmann patent therefore discloses the same configuration as shown in Figure 1 in the 953 patent, and teaches the "circuit arrangement" recited by the claims of the 953 patent.

ECMA TR/52

25.     The European Computer Manufacturers Association ("ECMA") published a technical report entitled, "Computer-Supported Telecommunications Applications: ECMA TR/52," in June 1990 ("ECMA TR/52"); therefore, ECMA TR/52 is prior art to the 953 patent under at least 35 U.S.C. § 102(b).  ECMA TR/52 describes an implementation of a CIT system that would comply with a standard developed by ECMA, called the Computer-Supported Telecommunications Standard ("CSTA standard").

26.     The 953 patent is invalid under 35 U.S.C. §§ 102 and/or 103 in view of ECMA TR/52 because ECMA TR/52 teaches each of the elements of the claims of the 953 patent.  In particular, ECMA TR/52 discloses a telephone system in combination with a LAN and LAN server, including an intelligent interface. For example, ECMA TR/52 teaches telephone extensions, an intelligent telephone system (Switch), personal computers (Terminal), an

integration element (Computer Network/Telephony Network Interface), which include a connection element and software layer, a LAN (Computer), and a LAN server (Computer). ECMA TR/52 therefore discloses the same configuration as shown in Figure 1 in the 953 patent, and teaches the "circuit arrangement" recited by the claims of the 953 patent.

The Network World Reference

27.     An article entitled, "Strengthening the PBX-Bond" ("the Network World Reference") was published in Network World on August 6, 1990, therefore is prior art to the 953 patent under at least 35 U.S.C. § 102(b).  The Network World Reference discloses various CIT systems that had been deployed by various CIT manufacturers, and/or had been in public use, in the United States as of August 6, 1990.

28.     The 953 patent is invalid under 35 U.S.C. §§ 102 and/or 103 in view of the Network World Reference because the Network World Reference teaches each of the elements of the claims of the 953 patent.  In particular, the Network World Reference discloses a telephone system in combination with a LAN and LAN server, including an intelligent interface. For example, the Network World Reference teaches telephone extensions, an intelligent telephone system (PBX), personal computers, an integration element (SCL), which includes a connection element and software layer, a LAN (Host Computer), and a LAN server (Host Computer). The Network Word Reference discloses the same configuration as shown in Figure 1 in the 953 patent, and teaches the "circuit arrangement" recited by the claims of the 953 patent.

The Gursahaney Patent

29.     U.S. Patent No. 5,097,528 ("the Gursahaney patent") entitled, "System for Integrating Telephony Data with Data Processing Systems" was filed on February 25, 1991 and issued on March 17, 1992; thus, the Gursahaney patent is prior art to the 953 patent under at least

35 U.S.C. § 102(b).  The Gursahaney patent discloses integrating telephone and computer functionality such that a computer can display caller information when a call is received.

30.     The 953 patent is invalid under 35 U.S.C. §§ 102 and/or 103 in view the Gursahaney patent because the Gursahaney patent teaches each of the elements of the claims of the 953 patent.  In particular, the Gursahaney patent discloses a telephone system in combination with a LAN and LAN server, including an intelligent interface. For example, the Gursahaney patent teaches telephone extensions, an intelligent telephone system (PBX), personal computers (PS/2), an integration element (Gateway), which includes the connection element and software layer, a LAN (Token – Ringer Network), and a LAN server (Host).  The Gursahaney patent discloses the same configuration as shown in Figure 1 in the 953 patent, and teaches the "circuit arrangement" recited by the claims of the 953 patent.

The CallCoordinator/2 Reference

31.     A document known as the IBM CallPath CallCoordinator/2 System Administrator's Guide ("CallCoordinator/2 Reference") was published March 1992, and therefore is prior art to the 953 patent under at least 35 U.S.C. § 102(b). The CallCoordinator/2 Reference describes a CIT system made and sold by IBM.

32.     The 953 patent is invalid under 35 U.S.C. §§ 102 and/or 103 in view the CallCoordinator/2 Reference because the CallCoordinator/2 Reference teaches each of the elements of the claims of the 953 patent.  In particular, the CallCoordinator/2 Reference discloses a telephone system in combination with a LAN and LAN server, including an intelligent interface. For example, the CallCoordinator/2 Reference teaches telephone extensions, an intelligent telephone system (PBX), personal computers, an integration element (SwitchServer/2), which includes the connection element and software layer, a LAN, and a LAN

server (Host Computer). The CallCoordinator/2 Reference discloses the same configuration as shown in Figure 1 in the 953 patent, and teaches the "circuit arrangement" recited by the claims of the 953 patent.

Additional Prior Art References

33.     In addition to The Prior Art described above, there are numerous additional prior art references that predate the 953 patent that disclose CIT systems of the type claimed in the 953 patent.  The 953 patent is also invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more of these additional prior art references.

**Invalidity Under 35 U.S.C. § 112**

34.     The specification and claims of the 953 patent fail to comply with 35 U.S.C. § 112.

35.     The 953 patent is invalid under 35 U.S.C. § 112, ¶ 1 because its specification does not "contain a written description of the invention and of the manner and process of making and using it, in [such] full, clear, concise and exact terms," as required by 35 U.S.C. § 112, ¶ 1.  In particular, the claims of the 953 patent are not supported by the written description provided in the 953 patent specification. For example, the claims of the 953 patent recite an "integration element," "a connection element," and a "software layer," yet there is no written description of these elements anywhere in the 953 patent specification.

36.     The 953 patent is invalid under 35 U.S.C. § 112, ¶ 1 because its specification does not "enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same," as required by 35 U.S.C. § 112, ¶ 1. For example, the claims of the 953 patent recite an "integration element," "a connection element," and a "software

layer," yet there is nothing in the 953 patent specification describing how one skilled in the art would make and use these elements.

37.     Upon information and belief, the specification of the 953 patent fails to "set forth the best mode contemplated by the inventors of carrying out the invention" and therefore the 953 patent is invalid under 35 U.S.C. § 112, ¶ 1. In particular, and upon information and belief, and by way of example, the specification of the 953 patent does not disclose the best mode contemplated by the named inventors on the 953 patent of implementing the claimed "integration element," "connection element," and "software layer."

38.     The claims of the 953 patent are invalid under 35 U.S.C. §  112, ¶ 2 because, in view of the specification's defects noted above, the claims do not "particularly point out and distinctly claim the subject matter that the [inventors] regard as [their] invention." By way of example, in view of the specification's defects noted above, the terms "integration element," "connection element," and "software layer" recited by the claims are vague and indefinite.

## COUNTERCLAIM III:
## DECLARATORY JUDGMENT OF UNENFORCEABILITY

39.     SAP incorporates the allegations set forth in all preceding paragraphs as if fully set forth herein.

40.     This counterclaim is for a declaratory judgment pursuant to 28 U.S.C. §§ 2201-02, 1331 and 1338(a).

41.     The 953 patent is unenforceable due to inequitable conduct before the United States Patent and Trademark Office ("USPTO") during prosecution of the application leading to the 953 patent.

**Background Facts Relating to Counterclaim of Unenforceability**

42.     37 C.F.R. § 1.56 ("Rule 56"), as it was in place during the pendency of the application leading to the 953 patent, stated, in relevant part: "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [Patent] Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section."

43.     Failure to comply with Rule 56 constitutes inequitable conduct that renders any patent procured thereby unenforceable.

44.     Paragraph nos. 45 through 78 are upon information and belief.

45.     The inventors named on the 953 patent (Messrs. Thomas and Mergemann), CSB's founder, chairman and CEO (Dr. Peter Schimitzek), and/or the attorney who prosecuted the 953 patent on behalf of the patent application inventors and CSB (Mr. Michael J. Striker) (collectively "the CSB prosecution group"), were associated with the filing and prosecution of the application leading to the 953 patent.

46.     During prosecution of the application leading to the 953 patent, each member of the CSB prosecution group had a duty of candor and good faith in dealing with the USPTO, including a duty to disclose to the USPTO all information known to them to be material to patentability of the claims of the 953 patent.

47.     During the pendency of the patent application leading to the 953 patent, one or more members of the CSB prosecution group knew of information that, under 35 U.S.C. §§ 102 and 103, was highly material to the patentability of the claims therein. Particularly, while the application leading to the 953 patent was pending, one or more of the members of the CSB prosecution group was aware of the following prior art that had been cited in German Patent and

Trademark Office ("GPTO") proceedings against CSB German patents/applications that were in the same family as the 953 patent and that name the same inventors as the 953 patent: U.S. Patent No. 4,866,758 ("the Heinzelmann patent"), and a reference entitled "Computer-Supported Telecommunications Applications," ECMA TR/52 ("ECMA TR/52") (collectively "the concealed prior art"). The same members of the CSB prosecution group were also aware that the concealed prior art was material to the related patents/applications in the GPTO, and hence to the pending application leading to the 953 patent because, before and during the pendency of the application leading to the 953 patent, they were aware of statements concerning the materiality of the concealed prior art that had been made in the GPTO proceedings with respect to the related German patents/applications. However, despite their duty of candor, and with intent to deceive, none of the members of the CSB prosecution group ever disclosed the concealed prior art to the USPTO.

48.     The materiality of the concealed prior art is described below.

49.     Consequently, the 953 patent is unenforceable because it was procured through inequitable conduct on the USPTO.

**Acts and Omissions Resulting in Unenforceability**

50.     The family to which the 953 patent belongs includes German utility model DE9303214U ("the German 214 patent"), German patent DE4330031 ("the German 031 patent"), and German Patent No. DE4406354 ("the German 354 patent"). The first application in the family was filed by CSB in Germany on March 5, 1993 and matured into the German 214 patent. On February 26, 1994, CSB filed a Patent Cooperation Treaty ("PCT") patent application, denominated as application no. PCT/DE94/00229, that claimed priority to the German 214 patent ("the PCT Application"). The PCT application led to the 953 patent.

51.     The 953 patent is the result of the PCT Application being entered into the national

stage in the USPTO on August 25, 1995. In the USPTO, the application leading to the 953 patent

was accorded U.S. Patent Application Serial No. 08/522,313 ("the 313 application"). The 953

patent issued from the 313 application on May 20, 1997. Thus, the pendency of the application

leading to the 953 patent was from August 25, 1995 to May 20, 1997.

52.     The German 031 and 354 patents name the same inventors as the 953 patent, i.e.,

Messrs. Thomas and Mergemann. The German 031 and 354 patents are also directed to the same

subject matter as, and bear similar text to, the 953 patent.

53.     The relevant GPTO proceedings relate to the German 031 and 354 patents. These

proceedings include: the original prosecution of the German 031 and 354 patents; an opposition

filed June 14, 1996 by Siemens Aktiengesellschaft against the German 031 patent ("Siemens 031

patent Opposition"); an opposition filed on October 17, 1996 by Siemens Aktiengesellschaft

against the German 354 patent ("Siemens 354 patent Opposition"); an opposition filed on

October 21, 1996 by Bosch against the German 354 patent ("Bosch 354 patent Opposition"),

and, an opposition filed on October 18 1996 by Alcatel Alsthom Compagnie Générale

d'Electricité against the German 354 patent ("Alcatel 354 patent Opposition").

54.     One or more members of the CSB prosecution group knew of the Heinzelmann

patent at least as early as February 14, 1994 and not later than October 1996 (i.e., before and

during the pendency of the application leading to the 953 patent) as a result of the Heinzelmann

patent being cited at least five times over that time period, during prosecution of, or during the

oppositions concerning, the German 031 and 354 patents.

55.     For example, the Heinzelmann patent was cited on February 14, 1994 in a search

report from the GPTO and again in an office action on April 6, 1994 during prosecution of the

German 031 patent. On August 1, 1994, the Heinzelmann patent was again cited in a search report from the GPTO and again in an office action on October 18, 1994 during prosecution of the German 354 patent.  On June 14, 1996, the Heinzelmann patent was cited in the Siemens 031 patent Opposition.  In October 1996, the Heinzelmann patent was cited in the Siemens 354 patent Opposition and in the Bosch 354 patent Opposition. In each case, the citation of the Heinzelmann patent was accompanied by a statement of its materiality to the German 031 and German 354 patents/applications.

56.   One or more members of the CSB prosecution group knew of ECMA TR/52 at least as early as October 21, 1996 (i.e., while the application leading to the 953 patent was pending) as a result of it being cited in the Bosch 354 patent Opposition. In particular, ECMA TR/52 accompanied the filing of the Bosch 354 patent Opposition, along with statements concerning its materiality to the German 354 patent.

57.   Despite their obligation to do so, none of the members of the CSB prosecution group ever disclosed either the existence or materiality of the concealed prior art to the USPTO or the U.S. Examiner in charge of the application leading to the 953 patent.

**Materiality of the Concealed Prior Art**

<u>The Heinzelmann Patent</u>

58.   The Heinzelmann Patent" is entitled "Phone Management Server for Use with a Personal Computer LAN." The Heinzelmann patent issued on September 12, 1989, and therefore qualifies as prior art to the 953 patent under at least 35 U.S.C. § 102(b).

59.   The Heinzelmann patent is material to the patentability of the claims of the 953 patent because the German 031 patent and the German 354 patents against which the Heinzelmann patent was applied are in the same family of patents as the 953 patent, they claim

priority to the same parent patent (i.e., the German 214 patent) as the 953 patent, and they name the same inventors as the 953 patent.

60.     The Heinzelmann patent is material to the patentability of the claims of the 953 patent because it teaches the subject matter of at least claim 1 of the 953 patent. In particular, as in the 953 patent, the Heinzelmann patent discloses a phone management server for use with a personal computer LAN.  For example, Figure 1 of the Heinzelmann patent, as well as the remainder of the Heinzelmann patent specification, disclose telephone extensions ($23_{1-3}$), an intelligent telephone system (22), personal computers ($11_{1-3}$), an integration element (21), a connection element (26), a LAN (12), a computing system (21), and a software layer (21). The Heinzelmann patent therefore discloses the same configuration as shown in Figure 1 in the 953 patent, and teaches the "circuit arrangement" recited by the claims of the 953 patent..

61.     The Heinzelmann patent is material to the patentability of the 953 patent because it teaches the features that the U.S. patent examiner found not to be present in the prior art available to him. In particular, in the Notice of Allowability for the 953 patent, the patent Examiner stated the reasons for allowance as: "None of the art of record suggest nor teach a circuit arrangement as claimed in independent [application] claim 6 [patent claim 1] comprising telephone sets directly connected to the public ISDN or Euro-ISDN via a first line and an intelligent telephone system and the inclusion of an integration element arranged between the intelligent telephone system and personal computers, where the intelligent element consists of software layer SDLC connection element and ISDN connection element with internal software." These features are taught or suggested by the Heinzelmann patent.

62.     The Heinzelmann patent is not cumulative of the prior art of record in the prosecution file of the 953 patent. Rather, the Heinzelmann patent is more material to

patentability than any of the prior art of record in the prosecution file of the 953 patent because the Heinzelmann patent invalidates the claims of the 953 patent.

ECMA TR/52

63.     ECMA TR/52 was published in June 1990, and therefore qualifies as prior art to the 953 patent under at least 35 U.S.C. § 102(b).

64.     ECMA TR/52 is material to the patentability of the claims of the 953 patent because the German 354 patent against which it was applied is in the same family of patents as the 953 patent, the German 354 patent and the 953 patent claim priority to the same parent (i.e., the German 214 patent) as the 953 patent, and the German 354 patent names the same inventors as the 953 patent.

65.     ECMA TR/52 is material to the patentability of the claims of the 953 patent because it teaches the elements of at least claim 1 of the 953 patent.  In particular, ECMA TR/52 dislcoses a telephone system in combination with a LAN and LAN server, including an intelligent interface. For example, Figure 1 of ECMA TR/52, as well as the remainder of its disclosure, teach telephone extensions, an intelligent telephone system (Switch), personal computers (Terminal), an integration element (Computer Network/Telephony Network Interface), which includes the connection element and software layer, a LAN (Computer), and a LAN server (Computer). ECMA TR/52 therefore discloses the same configuration as shown in Figure 1 in the 953 patent, and teaches the "circuit arrangement" recited by the claims of the 953 patent.

66.     ECMA TR/52 is material to the patentability of the 953 patent because it teaches the features that the U.S. patent examiner found not to be present in the prior art available to him. In particular, in the Notice of Allowability for the 953 patent, the patent Examiner stated the reasons for allowance as: "None of the art of record suggest nor teach a circuit arrangement as

- 19 -

claimed in independent [application] claim 6 [patent claim 1] comprising telephone sets directly connected to the public ISDN or Euro-ISDN via a first line and an intelligent telephone system and the inclusion of an integration element arranged between the intelligent telephone system and personal computers, where the intelligent element consists of software layer SDLC connection element and ISDN connection element with internal software."  These features are taught or suggested by ECMA TR/52.

67.     ECMA TR/52 is not cumulative of the prior art of record in the prosecution file of the 953 patent. Rather, ECMA TR/52 is more material to patentability than any of the prior art of record in the prosecution file of the 953 patent because ECMA TR/52 invalidates the claims of the 953 patent.

**Additional Indicia of Materiality of the Concealed Prior Art**

68.     The materiality of the concealed prior art references to the 953 patent is borne out by activities following the 953 patent's issuance. In particular, the German parent to the 953 patent (i.e., the German 214 patent), as well as a European patent in the same family, namely European Patent EP0687402B1 ("the European 402 patent") were invalidated over the concealed prior art.

69.     For example:

(i)     The GPTO invalidated the German 214 patent over a combination of ECMA TR/52 and other prior art. The German 214 patent is not only in the same family as, and bears the same named inventors as, the 953 patent, but its claims are similar in text to those of the 953 patent. The GPTO proceeding leading to the invalidation of the German 214 patent was a

direct consequence of patent infringement litigation over the German 214

patent initiated by CSB against SAP in Germany in 2007;

(ii)     six oppositions were filed against the European 402 patent.  As a result,

the EPO finally revoked the European 402 patent in 2005 based, in part,

on the Heinzelmann patent.

**Indicia of Intent to Deceive**

70.     Despite the fact that the Heinzelmann patent, ECMA TR/52 and numerous other

prior art references were cited during the various GPTO proceedings before or while the

application leading to the 953 patent was pending, none of the members of the CSB prosecution

group, and most notably, CSB's U.S. prosecution attorney, Mr. Michael Striker, ever filed in the

USPTO an Information Disclosure Statement disclosing the prior art of which they were aware,

as they were required to do.

71.     CSB's U.S. prosecution is a seasoned patent attorney and was aware of his duty to

disclose material information known to him to the USPTO.

72.     The materiality of the Heinzelmann patent was known to one or more members of

the CSB prosecution group during the pendency of the application leading to the 953 patent

because its materiality to the related German 031 and 354 patents/applications was explained in

the GPTO proceedings, and those one or more members were associated with the both the GPTO

proceedings relating to the German 031 and 354 patents/applications and the prosecution of the

application leading to the 953 patent.

73.     The materiality of ECMA TR/52 was known to one or more members of the CSB

prosecution group during the pendency of the application leading to the 953 patent because its

materiality to the related German 354 patent was explained in the Bosch 354 patent Opposition.

74.     CSB's founder, chairman and CEO, Dr. Peter Schimitzek, was involved in, and/or had knowledge of, the prosecution of the German and European applications that are related to the 953 patent, and knew of the existence and materiality of the Heinzelmann patent and ECMA TR/52 while the application leading to the 953 patent was pending. Yet, he did not disclose it to the USPTO. For example, on February 2, 1995, Dr. Schimitzek attended a hearing in the GPTO during prosecution of the German 031 patent . In connection with the application leading to the 953 patent, he also executed a Small Entity Status declaration on August 12, 1995, the same date that the inventors signed the Declaration and Power of Attorney for National Stage of PCT Patent Application.

75.     Dr Schimitzek was aware of his duty to disclose material information to the USPTO because he is a named inventor on other U.S. patents that were filed while the application leading to the 953 patent was pending, and in connection with those applications, executed an oath acknowledging his obligations under Rule 56.

76.     The named inventors on the 953 patent, Messrs. Thomas and Mergemann, knew of their duty of disclosure, as evidenced by the oath that they executed in connection with prosecution of the 953 patent in which they acknowledged this duty.

77.     Intent to deceive the USPTO by the CSB prosecution members is evident from, and minimally, can be inferred from their acts and omissions, coupled with the high degree of materiality of the concealed prior art.

78.     Accordingly, judicial relief from this Court is warranted in the form of a declaration that the 953 patent is unenforceable.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), SAP America, Inc. hereby respectfully requests a jury trial on all issues and claims so triable.

**REQUEST FOR RELIEF**

WHEREFORE, SAP America, Inc. respectfully requests that the Court enter judgment in favor and against CSB-System International Inc. as follows:

(a)    dismissing CSB's Complaint in its entirety, and denying all requested relief with prejudice;

(b)    declaring that SAP has not infringed and does not infringe the 953 patent;

(c)    declaring that the claims of the 953 patent are invalid;

(d)    declaring that the 953 patent is unenforceable;

(e)    enjoining CSB and all attorneys or other persons in active concert or participation with CSB from directly or indirectly charging infringement, or instituting any further action for infringement of the 953 patent against SAP or any of its customers, distributors, users or suppliers;

(f)    finding this case to be exceptional under 35 U.S.C. § 285, and awarding SAP its costs and fees in this action, including reasonable attorneys' fees and prejudgment interest thereon; and

(g)    granting SAP such other and further relief as the Court deems just and proper.

WOODCOCK WASHBURN LLP

Date:  July 20, 2010          By:   /s/  Jordan J. Oliver
                                    Steven J. Rocci (Pa. I.D. 34581)
                                    Jordan J. Oliver (Pa. I.D. 206528)
                                    Cira Centre
                                    2929 Arch Street, 12th Floor
                                    Philadelphia, PA  19104-2891
                                    Telephone:  (215) 568-3100
                                    Facsimile:  (215) 568-3439
                                    rocci@woodcock.com
                                    joliver@woodcock.com

                                    *Attorneys for SAP America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Jordan J. Oliver, hereby certify that on this 20th day of July, 2010, I caused a true and correct copy of the foregoing **SAP America, Inc.'s Answer and Counterclaims to CSB-System International Inc.'s Complaint** to be served via CM/ECF on the following attorney of record:

> Wayne A. Graver, Esquire
> Lavin, O'Neil, Ricci, Cedrone & Disipo
> 190 N. Independence Mall West
> Philadelphia, PA  19106
>
> Attorney for CSB-System International Inc.


_/s/  Jordan J. Oliver_____