IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CSB-SYSTEM INTERNATIONAL INC.,<br><br>    Plaintiff/Counterclaim Defendant,<br>        v.<br><br>SAP AMERICA, INC.,<br><br>    Defendant/Counterclaim Plaintiff. | Civil Action No. 10-CV-2156-RB |

**SAP'S COMBINED MOTION AND SUPPORTING MEMORANDUM FOR SUMMARY JUDGMENT OF INVALIDITY OF EACH CLAIM OF U.S. PATENT NO. 5,631,953 FOR CLAIMING BOTH AN APPARATUS AND A METHOD**

**TABLE OF CONTENTS**

I. LEGAL STANDARDS .................................................................................................. 1

    A. Summary Judgment ........................................................................................... 1

    B. The Law Forbids A Claim That Is Written To Cover Both A System As Well As The Use Of The System ...................................................................... 2

II. THE CLAIMS OF THE '953 PATENT ARE INVALID BECAUSE THEY INCLUDE BOTH SYSTEM AND METHOD LIMITATIONS ........................................ 5

    A. Claim 1 Is Indefinite ........................................................................................... 5

    B. Dependent Claims 2 And 3 Are Indefinite ......................................................... 6

    C. Dependent Claims 4-6 Are Indefinite ................................................................. 7

    D. Dependent Claims 7 and 8 Are Indefinite .......................................................... 7

    E. The "Action" Claim Limitations In Each Of The Claims Are Not Mere Functional Descriptions ..................................................................................... 8

III. CONCLUSION ............................................................................................................ 11

# **TABLE OF AUTHORITIES**

**CASES**

*Andersen v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................ 2

*Ariba, Inc. v. Emptoris, Inc.*,
    2008 U.S. Dist. LEXIS 59862 (E.D. Tex. Aug. 7, 2008) ........................................ 4

*Aventis Pharma S.A. v. Hospira, Inc.*,
    743 F. Supp. 2d 305 (D. Del. 2010) ........................................................................ 4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................ 1

*HTC Corp. v. IPCOM GmbH & Co.*,
    751 F. Supp. 2d 1 (D.D.C. Aug. 25, 2010) ......................................................... 4, 6

*In re Katz Interactive Call Processing Patent Litigation*,
    639 F.3d 1303 (Fed. Cir. 2011) ........................................................................... 2, 3

*IPXL Holdings v. Amazon.com, Inc.*,
    430 F.3d 1377 (Fed. Cir. 2005) ................................................................... 2, 3, 4, 7

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................................ 1

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.*,
    520 F.3d 1367, 1375 (Fed. Cir. 2008)) ................................................................... 8

*Rembrandt Data Technologies, LP v. AOL, LLC*,
    641 F.3d 1331 (Fed. Cir. 2011) ..................................................................... 2, 4, 10

**STATUTES**

35 U.S.C. § 101 (2006) .................................................................................................... 2

35 U.S.C. § 112 ............................................................................................................. 11

35 U.S.C. § 112 ¶2 .................................................................................................. 1, 2, 3

35 U.S.C. § 112 ¶6 .......................................................................................................... 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ..........................................................................................................1

A patent claim that is written so as to cover a system (e.g., a computer network) but that also includes one or more steps written to cover the actual use or operation of the system is invalid for failing to meet the requirements of 35 U.S.C. § 112 ¶ 2. Such a claim is indefinite as a matter of law because it is impossible to determine whether the claim is infringed when the system is made, or only when it is later used.

Each claim of U.S. Patent No. 5,631,953 ("the '953 patent") suffers from this fatal flaw. There can be no dispute that the claims are presented as system claims, as each begins with "[a] circuit arrangement." However, each of those claims is improperly drafted to also contain use – more specifically, method of use – elements. As such, the claims fail to inform the public whether the claims are infringed when the system is made, or only when it is actually being operated.

SAP's motion is based on this Memorandum, the Statement of Undisputed Facts, the attached exhibits ("Exh. __"), and other pleadings and record entries in this action. A (Proposed) Order granting summary judgment is filed herewith.

I.  **LEGAL STANDARDS**

   A.  **Summary Judgment**

Summary judgment under Fed. R. Civ. P. 56(c) "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quote removed). Summary judgment is not avoided simply because there is some metaphysical doubt as to the material facts, *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and the non-moving party (i.e., CSB) must set

forth the existence of a genuine issue for trial such that a reasonable finder of fact can return a verdict for that party.  *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 245 (1986).  Consistent with these tenets, patent cases are frequently resolved in whole or part via summary judgment, including on indefiniteness issues as presented here.

As indefiniteness is a question of law, summary judgment on this basis is particularly appropriate.  *See, e.g.*, *Rembrandt Data Technologies, LP v. AOL, LLC*, 641 F.3d 1331, 1338-40 (Fed. Cir. 2011) (affirming summary judgment of invalidity due to indefiniteness); *In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303, 1318 (Fed. Cir. 2011) (same); *IPXL Holdings v. Amazon.com, Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005) (same).

  **B.** **The Law Forbids A Claim That Is Written To Cover Both A System As Well As The Use Of The System**

Section 101 of the patent act defines the statutory classes of patentable subject matter, namely "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101 (2006).

While a patent applicant may draft claims to any of these classes, ***each claim*** in a patent may be directed to ***only a single class***.  *IPXL Holdings*, 430 F.3d at 1384.  Thus, for example, a single claim covering both a system (a.k.a. an apparatus) and a method of using or operating all or a part of that system is invalid for indefiniteness under §112, ¶ 2.  *Id. at* 1384.

In *IPXL Holdings*, the relevant claim (Claim 25) recited:

> The ***system of claim 2*** [including an input means] wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with that transaction type, and ***the user uses the input means*** to either change the predicted transaction information or accept the displayed transaction type and transaction parameters.

*Id.* (emphasis original).  The Federal Circuit, in affirming a summary judgment of indefiniteness, concluded that this language was indefinite because it was unclear as to whether infringement

2

would occur when someone *created* the system or only when a user actually *used* the input means:

> [A]s a result of the combination of two separate statutory classes of invention, a manufacturer or seller of the claimed apparatus would not know from the claim whether it might also be liable for contributory infringement because a buyer or user of the apparatus later performs the claimed method of using the apparatus.

*Id*. As such, the claim was invalid under § 112, ¶ 2 because it did not apprise a person of ordinary skill in the art of its scope:

> [I]t is unclear whether infringement of claim 25 occurs when one creates a system that allows the user to change the predicted transaction information or accept the displayed transaction, or whether infringement occurs when the user actually uses the input means to change transaction information or uses the input means to accept a displayed transaction. ***Because claim 25 recites both a system and the method for using that system, it does not apprise a person of ordinary skill in the art of its scope, and it is invalid under section 112, paragraph 2***.

*Id*. (emphasis added).

Since *IPXL Holdings*, the Federal Circuit has repeatedly held claims invalid for this improper mixing of statutory classes. In the last six months, the Federal Circuit has twice affirmed summary judgments of invalidity on this basis. In *In re Katz Interactive Call Processing*, the system claims in issue recited, in part:

> interface means for providing automated voice messages…to certain of said individual callers, ***wherein said certain of said individual callers digitally enter data.***

*In re Katz*, 639 F.3d at 1318 (emphasis added). Significantly, Katz (the patentee) argued that the highlighted language did not signify a method step, but rather defined only a desired functional capability. The Federal Circuit disagreed, finding that the claim recited user actions, not system capabilities, and therefore failed the requirements of § 112, ¶ 2. *Id.*

Similarly, in *Rembrandt Data Technologies*, the apparatus claims at issue included "trellis encoding means for trellis encoding the frames from said second buffer means; and

transmitting the trellis encoded frames." The Federal Circuit concluded that the final portion of the quoted language was a ***use*** of the apparatus and, thus, affirmed the district's conclusion that the claims were invalid as indefinite. *Rembrandt*, 641 F.3d at 1339. Significantly, the patentee argued that the claim should be interpreted with the clause "transmitter section for" inserted ahead of "transmitting the trellis encoded frames," thus turning the element from a use to an apparatus limitation. Neither the district court nor the Federal Circuit would take the bait:

> [w]e have stated that "[t]his court, however, repeatedly and consistently has recognized that **courts may not redraft claims**, whether to make them operable or to sustain their validity."

*Id* (emphasis added).

Several district courts have also found apparatus or composition claims invalid as indefinite when those claims included method steps. *See, e.g.*, *Aventis Pharma S.A. v. Hospira, Inc.*, 743 F. Supp. 2d 305, 328-31 (D. Del. 2010) (claim 2: "whereby said composition ***is used to form***"; claim 10: "whereby said therapeutic composition ***forms or is used to form***"; "The disputed claims suffer from precisely the lack of clarity that drove the Federal Circuit's decision in *IPXL Holdings* – i.e., it is not clear when the mixed subject matter claim would be infringed"); *HTC Corp. v. IPCOM GmbH & Co.*, 751 F. Supp. 2d 1, 32 (D.D.C. Aug. 25, 2010) ("Claims One and Eighteen of the '830 Patent recite an apparatus, a 'mobile station,' that achieves a handover from the first base station to the second base station by performing six method steps such as storing link data, holding link resources in reserve, and later deleting the link data"); *Ariba, Inc. v. Emptoris, Inc.*, 2008 U.S. Dist. LEXIS 59862 at *21-*25 (E.D. Tex. Aug. 7, 2008) ("a bidding device. . . wherein a bid submitted by the potential seller ***is compared to*** the corresponding bid ceiling of the potential seller operating the bidding device"; emphasis added).

## II. THE CLAIMS OF THE '953 PATENT ARE INVALID BECAUSE THEY INCLUDE BOTH SYSTEM AND METHOD LIMITATIONS

### A. Claim 1 Is Indefinite

There can be no dispute that claim 1 of the '953 patent purports to be directed to a system (Undisputed Fact No. 1). It begins, "[a] circuit arrangement" and includes several system elements such as a plurality of telephone extensions, a first line, an intelligent telephone system, and an integration element (*see* Undisputed Fact No. 2).

There likewise can be no dispute that claim 1 also recites several active use steps. In particular, claim 1 expressly requires "receiving signals," "sending back signals," "sending a data record," and "receiving a data record." In context, the claim recites, in relevant part:

> 1. *A circuit arrangement. . .* comprising. . .
>
> an integration element arranged between said intelligent telephone system and said personal computers, *said integration element receiving signals* via at least one connection element selected from the group consisting of an SDLC connection element and an ISDN connection element via a second line from said at least one telephone network via said intelligent telephone system *and sending back signals* to said at least one telephone network, *said integration element also sending a data record* assigned an appropriate information via a third line, via a LAN connected to a LAN server by a fourth line and via a fifth line to said personal computers *and receiving a data record* from said personal computers again. . . .

(Undisputed Fact No. 2; Exhibit 1 at Col. 5, line 52 – Col. 6, line 12; emphasis added.)

It is clear from the words of the claim itself that these actions are only carried out when the "circuit arrangement" is operating; that is, they are not set forth simply as a functional statement of the capability of the integration element, but as the associated activity itself. Indeed, unlike other terms in the claim that do – properly – denote *capability* of a certain use (e.g., "arranged so that" and "connectable"), the highlighted claim terms improperly cover the actual use itself. The acts of "sending" and "receiving" occur only when the system is being used (Undisputed Fact No. 4). Indeed, CSB's own expert, Dr. Gaynor, admitted exactly this on

5

deposition (Exh. 2 at 74-75 & 75:5-8: "Q: [I]f no call is coming in or if no call is still active on the system, it's not sending and receiving?  A: No").

The claim as written is therefore unclear as to whether infringement would occur by assembling the elements of the circuit in the arrangement described by the claim, or only when the circuit arrangement is actually operated such that the integration element is sending and receiving signals and data records.  Like the claim invalidated in *HTC* and the other cases described above, the claim here "describes the apparatus as actually performing the method steps; it does not merely define the apparatus as a structure [that] has certain means enabling it to perform certain steps."  *HTC*, 751 F. Supp. 2d at 32.

### B. Dependent Claims 2 And 3 Are Indefinite

Claims 2 and 3 both depend directly from claim 1 (Undisputed Fact No. 5), and, thus, suffer from all of the flaws of claim 1.  For that reason alone, and because claim 1 is invalid as indefinite, claims 2 and 3 are necessarily also indefinite.

But claims 2 and 3 have additional problems.  The claims recite, in relevant part (emphasis added):

> 2. A circuit arrangement as defined in claim 1, wherein said personal computers are provided with keyboards so that a speech or data communication. . . ***is sent to another competent party and back after the respective competent party has sent a data record*** assigned the appropriate information to said integration element ***by operating said keyboard*** of the respectively assigned one of said personal computers, ***and a necessary signal*** leaving said integration element ***is applied*** at said intelligent telephone system ***and a connection*** to at least one another telephone extension ***is established*** . . . .
>
> 3. A circuit arrangement as defined in claim 1, wherein said personal computers are provided with keyboards so that a speech or data communication. . . ***is sent to another competent party and back after the respective competent party has sent a data record*** assigned the appropriate information to said integration element ***by operating said keyboard*** of the respectively assigned one of said personal computers, ***and a necessary signal*** leaving said integration element ***is applied*** at said intelligent telephone system ***and a connection*** to all said telephone extensions ***is established***. . . .

(Undisputed Fact No. 7; Exh. 1 at Col. 6, ll. 13-46) (emphasis added).

In addition to the flaws incorporated into these claims by their dependency on claim 1, these claims expressly recite further user activity (Undisputed Fact No. 7), and, therefore, are invalid for that reason as well. As in *IPXL Holdings*, this is performance of an action by a human, and it is unclear whether any alleged infringement would occur upon creation of the claimed circuit arrangement or only later, upon the action of a person "operating said keyboard" to cause a data record to be transmitted.

There can be no legitimate dispute that claims 2 and 3 improperly include both apparatus and method limitations at the same time and are, thus, invalid.

### C.   Dependent Claims 4-6 Are Indefinite

Claim 6 of the '953 patent depends directly from claim 1 (Undisputed Fact No. 5), and, thus, suffers from all of the flaws of claim 1 discussed above. Similarly, claims 4 and 5 both depend directly from claim 2 (Undisputed Fact No. 5), and, thus, suffer from all of the flaws of claim 2, which also includes the flaws of claim 1.

Consequently, because claims 1 and 2 have already been shown to be invalid as indefinite, claims 4-6 are necessarily also indefinite.

### D.   Dependent Claims 7 and 8 Are Indefinite

Claims 7 and 8 both depend directly from claim 1 (Undisputed Fact No. 5), and, thus, are necessarily invalid as indefinite for the same reason that claim 1 is invalid. Claims 7 and 8, however, also suffer from additional flaws even beyond those stemming from their dependence on claim 1.

Dependent claims 7 and 8 recite in relevant part:

> 7.   A circuit arrangement as defined in claim 1, wherein. . . ***a fax transmission is made*** simultaneously between the respective competent party and the caller ***using the keyboard*** of a respective one of said personal computers ***by***

7

*using the connection of the respective personal computer* with said at least one telephone network. . . .

8.   A circuit arrangement as defined in claim 1, wherein. . . ***a fax transmission is made*** parallel between the respective competent party and the caller ***using the keyboard*** of a respective one of said personal computers ***by using the connection of the respective personal computer*** with said at least one telephone network. . . .

(Undisputed Fact No. 8; Exh. 1 at Col. 6, line 63 – Col. 8, line 9) (emphasis added).

The additional action limitations in these two claims are closely analogous to those discussed above with respect to claims 2 and 3.  Once again, the inclusion of actions of the ultimate user "using the keyboard" renders the claim indefinite because one of ordinary skill in the art is unable to determine whether infringement occurs through construction of the described apparatus or not until the user undertakes the specifically-recited action step (Undisputed Fact No. 9).  Consequently, even beyond their invalidity for dependence on invalid claim 1, claims 7 and 8 are invalid for their own simultaneous inclusion of both apparatus limitations and method limitations.

### E.   The "Action" Claim Limitations In Each Of The Claims Are Not Mere Functional Descriptions

Undoubtedly, CSB will try to argue that these critical "action" limitations are only descriptions of the functional capabilities of the claimed system.  Any such contention would be meritless.  While it may be proper for a system claim to state that a particular element must have certain capabilities, or is arranged so as to perform particular functions,[1] the claim may not

---

[1]   In *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008), the Federal Circuit dealt with the use of a functional expression in an apparatus claim that generously employed "means plus function," or "means for," claim limitations. The Federal Circuit appears to have been persuaded that, as a result, the claim was subject to 35 U.S.C. § 112 ¶ 6, and therefore was directed to the capability of performing the recited functions – that is, the "means for" performing the function at issue – as opposed to the functions themselves. However, that is not the case here.   The claims of the 953 patent do not use "means plus function" language, and are not subject to 35 U.S.C. § 112 ¶ 6.

include active language as to the actual exercise of those capabilities or carrying out of those functions. That kind of language creates ambiguity as to *when* the claim has been infringed.

Any CSB contention that the "sending" and "receiving" language is a functional limitation uninfluenced by human activity is dispelled by the fact that the '953 patent specification plainly contemplates active operation of the system to cause the integration element to send or receive signals and data records. Without activation of the system by a caller, the claimed sending/receiving would not be put into effect (Undisputed Fact No. 4).[2]  Again, as explicitly admitted by CSB's expert, Dr. Gaynor (Exh. 2 at 74-75 & 75:5-8: "Q: [I]f no call is coming in or if no call is still active on the system, it's not sending and receiving?  A: No").

Any such CSB contention is further belied by portions of the '953 patent claims themselves, which include several instances where the patentee did use proper functional language or similar phraseology. For example, claim 1 describes the telephone extensions as "directly connectable," and each of claims 4 and 5 describe that the integration element "is

---

[2]  The specification describes that a third-party user (i.e., a caller) first "dials a competent party of telephone extension **2** through the public ISDN or Euro ISDN telephone network and the connection is established…" (Exh. 1 at col. 4, ll.33-35). After describing the way in which the connection is established, the specification goes on to state "[t]his is realized by the integration element **5** in such a way that when a call is connected to telephone extension **2** a signal is immediately sent on line b by the intelligent telephone system **3** to the integration element **5**…." (*id.* at col. 4, ll.47-50). Thus, in order for the integration element to undergo the process of "receiving signals" and "sending back signals," a third-party user must first dial another party. There is further language in the specification indicating that a third-party user also initiates the sending and receiving of data records. For example, "[i]f the party dialed by the caller is not the competent party then the caller can call the competent party, e.g. extension **11** *by operating the keyboard of his personal computer **4** and by switching a data record* via line e, the LAN **9** via line c to the integration element **5** by the signal generated by the integration element **5**, via line b to the intelligent telephone system **3** and from there via the line a" (*id.* at col. 4, ll.55-63; emphasis added); and "[i]f the called or switched competent party, e.g. at extension **11**, requires the inclusion of another competent party or several competent parties to clarify questions and data of the caller, *he can include these competent parties in a conference by operating the keyboard of his own personal computer **12** and by transferring a data record in the same way as described above. . .*" (*id.* at col. 5, ll.3-9; emphasis added).

9

formed so that it is possible to hold [conversations]. . .," thus describing what the integration element is able to do, without claiming the actual "holding" of any conversation.

The claims could have been written using such "capability" language rather than including specific actions within the claims themselves.  But the fact that the claims could have been properly drafted is not relevant; the salient fact is that the patentee did *not* do so.  The Court may not re-write the claims to overcome fatal flaws even though the patentee could have avoided them itself.  *Rembrandt Data Technologies*, 641 F.3d at 1339.

III.    **CONCLUSION**

There is no legitimate dispute that every claim is invalid for claiming both structure and action simultaneously and, thus, failing to meet the requirements of 35 U.S.C. § 112. Summary judgment to that effect should be entered.

Respectfully submitted,

Date: August 12, 2011        WOODCOCK WASHBURN LLP

By:   /s/ Henrik D. Parker
Steven J. Rocci (Pa. I.D. 34581)
Henrik D. Parker (Pa. I.D. 53938)
Gary H. Levin (Pa. I.D. 23430)
Jordan J. Oliver (Pa. I.D. 206528)
Arshid Sheikh (Pa. I.D. 308638)
Cira Centre
2929 Arch Street, 12th Floor
Philadelphia, PA 19104-2891
Telephone: (215) 568-3100
Facsimile: (215) 568-3439
rocci@woodcock.com
parker@woodcock.com
levin@woodcock.com
joliver@woodcock.com
asheikh@woodcock.com

*Attorneys for SAP America, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of August, 2011, I caused a true and correct copy of the foregoing SAP'S COMBINED MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF ALL CLAIMS OF U.S. PATENT NO. 5,631,953 FOR CLAIMING BOTH AN APPARATUS AND A METHOD IN EACH CLAIM to be served via CM/ECF on the following attorney of record:

Wayne A. Graver, Esquire (wgraver@lavin-law.com)
Lavin, O'Neil, Ricci, Cedrone & Disipo
190 N. Independence Mall West
Philadelphia, PA  19106

Thorsten Schmidt, Esquire (tschmidt@schmidt-llc.com)
Bruce J. Koch, Esquire (bkoch@schmidt-llc.com)
Schmidt LLC
666 Third Avenue, 30th Floor
New York, NY  10038
Tel: (212) 809-1444
Fax: (212) 983-1554

Attorneys for CSB-System International Inc.


    /s/  Henrik D. Parker