IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CSB-SYSTEM INTERNATIONAL INC.,<br><br>Plaintiff/Counterclaim Defendant,<br>v.<br><br>SAP AMERICA, INC.,<br><br>Defendant/Counterclaim Plaintiff. | Civil Action No. 10-CV-2156-RB |

**SAP'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY FOR CLAIMING BOTH AN APPARATUS AND A
METHOD IN THE SAME CLAIMS**

**TABLE OF CONTENTS**

I.   SAP'S MOTION RELIES ON THE MOST VALUABLE EVIDENCE—THE INTRINSIC EVIDENCE ................................................................................................ 3

II.  SAP'S INTERROGATORY RESPONSES ARE NOT IMPLICIT OR EXPLICIT ADMISSIONS OF DEFINITENESS ............................................................................ 4

III. CSB MISCONSTRUES THE CONTROLLING FEDERAL CIRCUIT CASE LAW ........................................................................................................................... 5

IV.  THE LACK OF A PATENT OFFICE REJECTION FOR INDEFINITENESS IS IRRELEVANT ........................................................................................................... 6

V.   THE '953 PATENT CLAIMS EXHIBIT A FATAL MIX OF PROPER FUNCTIONAL CLAIMING AND IMPROPER MIXED-CLASS CLAIMING .............. 6

VI.  CONCLUSION ........................................................................................................... 9

**TABLE OF AUTHORITIES**

CASES

*Aventis Pharma S.A. v. Hospira, Inc.*,
   743 F. Supp. 2d 305 (D. Del. 2010) ................................................................................ 6, 7, 8

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
   358 F.3d 1371 (Fed. Cir. 2004) ................................................................................................ 7

*Datamize, LLC v. Plumtree Software, Inc.*,
   417 F.3d 1342 (Fed. Cir. 2005) ................................................................................................ 3

*Exxon Research & Eng'g v. U.S.*,
   265 F.3d 1371 (Fed. Cir. 2001) ................................................................................................ 3

*HTC Corp. v. IPCOM GmbH & Co.*,
   751 F. Supp. 2d 1 (D.D.C. Aug. 25, 2010) .............................................................................. 6

*IPXL Holdings v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005) ................................................................................................ 3

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ............................................................................. 3

*Rembrandt Data Technologies, LP v. AOL, LLC*,
  641 F.3d 1331 (Fed. Cir. 2011)..............................................................................5, 7

*Sinorgchem Co. v. Int'l Trade Comm'n*,
  511 F.3d 1132 (Fed. Cir. 2007)..................................................................................3

**STATUTES**

35 U.S.C. § 112..................................................................................................................2, 9

35 U.S.C. § 112 ¶2.........................................................................................................1, 2, 4

35 U.S.C. § 282..................................................................................................................2, 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(d)(2).......................................................................................................2, 4

Fed. R. Civ. P. 8(d)(3).......................................................................................................2, 5

CSB's Opposition is fatally flawed as it misstates the law in several respects and relies on expert testimony that, even if accepted, would not save the claims at issue from indefiniteness. Stripping away the irrelevant and inaccurate aspects of CSB's contentions, the only issue for this Court to decide is straightforward, simple, and perfectly appropriate for decision on summary judgment: Do the claims of the '953 patent include method elements in their description of an apparatus? If they do, then they are invalid.

CSB posits five reasons why SAP's motion should be denied, and this Reply will track those reasons. Each fails to create any genuine issue and demonstrates a disregard for basic patent law principles.

**(1)** CSB argues that SAP put forth "no evidence" of indefiniteness and for that reason alone SAP's motion should be denied. At best, CSB's argument borders on frivolous. It is beyond dispute that analysis of invalidity for failure to meet the definiteness requirement of Section 112 ¶2—including based on mixed statutory classes—is a legal conclusion drawn from the Court's performance of its duty to construe the claims. *See, e.g.,* the Court's July 27, 2011, Memorandum concerning claim construction issues (Docket No. 64) at 5. It is also beyond dispute that the most significant *evidence* regarding the meaning and effect of claim terms is the intrinsic evidence, *i.e.*, **the patent itself**. *See id.* at 6. SAP relied exclusively on this "most significant" evidence. Neither CSB's legally flawed theory nor its conclusory expert declaration can trump the invalidating weight of the ***intrinsic evidence***.

**(2)** CSB argues that SAP's interrogatory responses denying infringement establish that one skilled in the art can determine when the claims are, or are not, infringed. Again, at best, frivolous. It is beyond dispute that interrogatory responses are intended to supplement a party's

pleadings, which Fed. R. Civ. P. 8(d)(2) makes clear can be stated in the alternative, and which Rule 8(d)(3) makes clear need not be consistent. SAP pleaded, *inter alia*, invalidity under Section 112 ¶2 *and* non-infringement.

**(3)** CSB attempts to distinguish cases cited by SAP, but does so based on misstatement of the law and willful ignorance of the stark similarities in the "action" or method language found to violate the mixed classes rule in the case law and the language in its own patent claims. For example, compare claim 1 of the '953 patent to the validity "standard" cited in CSB's introduction:

> "said individual callers digitally enter data" (CSB example of language found invalid (CSB Op. at 2))
>
> versus
>
> "said integration element receiving signals" ('953 patent, claim 1).

Both recite invalid claim language that modifies description of structural elements with active method steps.

**(4)** CSB alleges that the claims are valid because the Patent Office reviewed the claims for indefiniteness and ultimately allowed the claims to issue. Irrelevant. In *every* instance where a court finds a claim invalid for failing to meet the requirements of 35 U.S.C. § 112, the Patent Office had previously allowed the claims to issue; hence, the presumption (but *not* conclusion) of validity in 35 USC § 282.

**(5)** CSB argues that the claims of the '953 patent follow a well-accepted formula for reciting functional limitations. The formula to which CSB refers is eminently simple. Patentees may recite physical elements in terms of the functions they are *capable of* performing or *intended to perform*; they may not recite elements *actually performing* those functions. There is a validity-critical difference between "said integration element *capable of* receiving signals,"

2

which properly recites an intended use or function, and "said integration element receiving signals," which improperly changes a statement of intended use into a statement of action.

### I. SAP'S MOTION RELIES ON THE MOST VALUABLE EVIDENCE—THE INTRINSIC EVIDENCE

"Determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Exxon Research & Eng'g, v. U.S.*, 265 F.3d 1371 (Fed. Cir. 2001) (cited by CSB); *see also*, *IPXL Holdings v. Amazon.com, Inc.*, 430 F.3d 1377, 1380 (Fed. Cir. 2005) (cited by CSB); *Datamize, LLC v. Plumtree Software, Inc.*, 417 F. 3d 1342, 1347-48 (Fed. Cir. 2005) (claims indefinite; expert testimony rejected). As this Court made clear in its July 27th Memorandum, the "most significant" source of evidence to be considered in construing patent claims is the ***intrinsic evidence***, *i.e.*, the patent itself. Memorandum (D.I. 64) at 6. This Court did not make new law; it based its observation on long-standing, undisputed Federal Circuit precedent. *See id at 5-8*.

Nevertheless, CSB ignores this "most significant" evidence—and the law—and asserts that SAP's motion must be denied because SAP allegedly submitted no evidence to support its motion (CSB Op. at, e.g., 1 ("no evidence"; "does not contain *any* evidence" (emphasis in original)). CSB's contention is that SAP cannot prevail without an expert declaration, and that CSB must prevail because it has one.[1] CSB's assertion demonstrates a willful ignorance of this

---

[1] Dr. Gaynor's Declaration, even if considered, cannot outweigh the plain effect of the intrinsic evidence. It offers only bare conclusions with no support or discussion. Thus, even if expert testimony was appropriate or necessary to decide the present issue – and it is not – what Dr. Gaynor proffers is not entitled to any weight. *See, e.g., Sinorgchem Co. v. Int'l Trade Comm'n*, 511 F.3d 1132, 1137 n.3 (Fed. Cir. 2007) ("We attribute no weight to that testimony because the experts did not identify any evidence that those skilled in the art would recognize [that] any term used in the specification, has an accepted meaning in the field of chemistry. Under such circumstances, testimony as to how one skilled in the art would interpret the language in the specification is entitled to little or no weight"); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318

Court's earlier Order and of clear Federal Circuit precedent where there exists no ambiguity as to the proper evidence and standard.

Only four Federal Circuit decisions have examined indefiniteness based on mixed statutory classes. To further illustrate the willful nature of CSB's ignorance of the law, CSB cites ***none*** of these in support of its theory that the ***only*** evidence of indefiniteness is expert testimony. Indeed, it cannot, since none of those cases make any reference to, much less rely upon, expert testimony. CSB's theory is unsupported by any case.

As to CSB's statement of undisputed facts (Numbered 10-20), even if one were to assume that all of these alleged facts were true, they add nothing to a proper analysis of the motion. CSB's alleged Undisputed Facts 10-13 are conclusory, unsupported, and imply an inappropriate test – that a movant seeking a declaration of indefiniteness for mixed-class claiming must go beyond the intrinsic evidence and submit extrinsic declarations or the like. Alleged Undisputed Facts 14-20 mean nothing in the context of the analysis here, since they are always true ***even when a court finds a claim invalid for indefiniteness***.

## II.  SAP'S INTERROGATORY RESPONSES ARE NOT IMPLICIT OR EXPLICIT ADMISSIONS OF DEFINITENESS

CSB's second assertion – that SAP's interrogatory responses denying infringement establish that one skilled in the art can determine when the claims are, or are not, infringed and that, therefore, those claims are not indefinite – fares no better than its first. SAP pleaded, *inter alia*, both invalidity under Section 112 ¶2 and non-infringement. Interrogatory responses are intended to supplement a party's pleadings, which Fed. R. Civ. P. 8(d)(2) makes clear can be stated in the alternative, and which Rule 8(d)(3) makes clear need not be consistent. Inasmuch as

---

(Fed. Cir. 2005) (*en banc*) ("conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court").

determinations of definiteness are a component of claim construction, and claim construction takes place long after interrogatory responses are first due, delay in fleshing out alternative theories would be prejudicial to both parties and CSB would have vehemently objected if SAP had not provided its various theories. CSB's objection to alternative pleading and timely discovery responses is not deserving of serious consideration.

### III. CSB MISCONSTRUES THE CONTROLLING FEDERAL CIRCUIT CASE LAW

Although CSB argues that the case law supporting SAP's motion for summary judgment is distinguishable (CSB Opp. at 2, 16-18), that case law is directly applicable and compels the legal conclusion of indefiniteness. CSB argues distinctions without basis, ignoring the parallels between the action statements in the applicable Federal Circuit cases and those in the claims at issue. In short, the claims at issue need not have precisely the same language as applicable Federal Circuit cases to be held indefinite. Rather, the Court must apply the same basic grammatical principles evident in those Federal Circuit cases. Doing so, the invalidity parallels to the claims of the '953 patent are apparent.[2]

Perhaps most egregiously, CSB argues that the Federal Circuit finds improper mixing of method and apparatus language only where it finds "users" or "individuals" performing actions as opposed to the system or a physical component of the system (CSB Opp. at 16-17). The Federal Circuit has not so narrowly circumscribed the IPXL doctrine and no such narrowing can be implied from those cases. Several of SAP's cited cases, including *Rembrandt Data Technologies*, 641 F.3d 1331 (Fed. Cir. 2011); *HTC Corp. v. IPCOM GmbH & Co.*, 751 F. Supp.

---

[2] While CSB cites additional law on indefiniteness (CSB Opp. at 4), that law concerns the more typical indefiniteness issues, not the IPXL sub-genus of claims that mix statutory classes of method and apparatus within individual claim elements. In such cases, the fact that a claim includes both action elements and apparatus necessarily makes the claim indefinite.

2d 1 (D.D.C. Aug. 25, 2010), and *Aventis Pharma S.A. v. Hospira, Inc.*, 743 F. Supp. 2d 305 (D. Del. 2010), find invalidity for mixing classes and none relied upon the user-actions distinction urged by CSB.

### IV. THE LACK OF A PATENT OFFICE REJECTION FOR INDEFINITENESS IS IRRELEVANT

CSB's argument that the '953 patent claims must be definite because the Patent Office allowed them (CSB Opp. at 2, 8) is meritless. In ***every*** instance where a court finds claims invalid for failing to meet the requirements of 35 U.S.C. § 112, the Patent Office had mistakenly allowed the claims to issue. Ultimately, the Patent Office is fallible and that is why 35 U.S.C. § 282 contains only a presumption of patent validity rather than a provision making patents uncontestable.

### V. THE '953 PATENT CLAIMS EXHIBIT A FATAL MIX OF PROPER FUNCTIONAL CLAIMING AND IMPROPER MIXED-CLASS CLAIMING

CSB argues that the claims of the '953 patent follow a well-accepted formula for reciting functional limitations. That may be true as to parts of the claims, but it is not true throughout the claims, and the juxtaposition of proper and improper functional claiming in the '953 patent parallels that in cases finding invalidity.

The formula is simple. Patentees may recite physical elements in terms of the functions that they are ***capable of*** performing or are ***intended to perform***; they may not recite those elements as ***actually performing*** those functions. There is a validity-critical difference between "said integration element ***capable of*** [or "for] receiving signals," which properly recites an

6

intended use or function, and "said integration element *receiving* signals," which improperly changes a statement of intended use into a statement of action.

Not surprisingly, perhaps most instructive of the Federal Circuit cases is the most recent: *Rembrandt Data Technologies*. Like the claims of the '953 patent, the claims in *Rembrandt* included both proper use of functional claim language and improper use of active (method) language:

> trellis encoding means *for* trellis encoding the frames from said second buffer means; and
>
> transmitting the trellis encoded frames.

*Id*. at 1339 (emphasis added). "Trellis encoding means" was the relevant structure. "[F]or trellis encoding the frames" was a proper statement of intended function using the word "for." "Transmitting the trellis encoding frames" was an *im*proper statement of activity, *i.e.*, a method limitation describing structure. *See id*. The court rejected the patentee's invitation to read into the claim, *inter alia*, the word "for" such that action statement would properly recite an intended function, stating:

> [w]e have stated that "[t]his court, however, repeatedly and consistently has recognized that *courts may not redraft claims, whether to make them operable or to sustain their validity*."

*Id*. (quoting *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004); emphasis added).

Likewise, that other portions of the claims demonstrate proper use of "functional capability" language was a principal reason why the court in *Aventis Pharma* found the claims indefinite:

> Had the patentees wished to state that the composition was merely "capable of" being formed into a perfusion, they could easily have said so explicitly. Indeed, the disputed claims describe the inherent properties and intended subsequent use of the resulting "inject***able*** solution" in precisely these terms, stating that the

7

> injectable solution must be "*capable of* being injected without anaphylactic or alcohol intoxication manifestations…." *The court concludes that the inventors did not intend for "forms or is used to form" to have the same meaning as "capable of" appearing in the same claim.* Consequently, the court concludes that the disputed phrase, which appears in claims that purport to cover only a "composition," serves as a process limitation in each of the claims in which it appears.

*Id.*, 743 F. Supp. 2d at 329-30 (emphasis added; internal citation omitted).

The juxtaposition of proper and improper functional claiming in the '953 patent claims is ignored in CSB's Opposition brief.  For example, claim 1 of the '953 patent includes numerous terms that properly denote the *capability* of a certain use in functional terms, such as "arranged *so that*" and "directly connect*able*"; each of claims 4 and 5 recite that the claimed integration element "is formed *so that* it is possible to hold [conversations]," thus describing what the integration element *is able to do*, without claiming the actual "holding" of any conversation.  Similarly, each of claims 4 and 5 describe that the integration element "is formed so that it is possible to hold [conversations]. . .," thus describing what the integration element is able to do, without claiming the actual "holding" of a conversation.

This juxtaposition of proper and improper functional claiming is evident not only in the claims, but also in CSB's own brief papers.  Dr. Gaynor—in his expert declaration—falls prey to this same juxtaposition in trying to argue the case for definiteness.  In particular, claim 1 recites:

> said integration element receiving signals….

To make the case that this claim language recites a proper functional limitation rather than an improper method limitation, Dr. Gaynor recasts the claim language as follows:

> "said integration element" *has to be capable of* "receiving signals
> via at least one connection element"

(Gaynor Decl. at ¶7; emphasis added.)  The similarity to the Federal Circuit's *Rembrandt* case could not have been made more clearly.

8

## VI. CONCLUSION

There is no legitimate dispute that each and every claim of the '953 patent is invalid for failing to meet the requirements of 35 U.S.C. § 112. CSB does not dispute the few facts necessary to resolution of this motion, and a proper legal analysis shows that each claim includes one or more action elements. Summary judgment of invalidity of each of claims 1-8 should be entered.

Respectfully submitted,

Date: September 20, 2011        WOODCOCK WASHBURN LLP

By:   /s/  Henrik D. Parker
Steven J. Rocci (Pa. I.D. 34581)
Henrik D. Parker (Pa. I.D. 53938)
Gary H. Levin (Pa. I.D. 23430)
Jordan J. Oliver (Pa. I.D. 206528)
2929 Arch Street, 12th Floor
Philadelphia, PA 19104-2891
Telephone: (215) 568-3100
Facsimile: (215) 568-3439
rocci@woodcock.com
parker@woodcock.com
levin@woodcock.com
joliver@woodcock.com

*Attorneys for SAP America, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of September, 2011, I caused a true and correct copy of the foregoing SAP's Reply Memorandum In Support Of Motion For Summary Judgment Of Invalidity For Claiming Both An Apparatus And A Method In Same Claims to be served via CM/ECF on the following attorney of record:

>Wayne A. Graver, Esquire (wgraver@lavin-law.com)
>Lavin, O'Neil, Ricci, Cedrone & Disipo
>190 N. Independence Mall West
>Philadelphia, PA  19106
>
>Thorsten Schmidt, Esquire (tschmidt@schmidt-llc.com)
>Bruce J. Koch, Esquire (bkoch@schmidt-llc.com)
>Schmidt LLC
>666 Third Avenue, 30th Floor
>New York, NY  10038
>Tel: (212) 809-1444
>Fax: (212) 983-1554
>
>Attorneys for CSB-System International Inc.

                                          /s/  Henrik D. Parker