**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CSB-SYSTEM INTERNATIONAL INC., | : | |
| | : | CIVIL ACTION |
| Plaintiff/Counterclaim Defendant, | : | |
| | : | |
| v. | : | |
| | : | NO.  10-2156 |
| SAP AMERICA, INC., | : | |
| | : | |
| Defendant/Counterclaim Plaintiff. | : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                    March 30, 2012

Currently pending before the Court is a Motion by Defendant SAP America, Inc. for

Summary Judgment of Invalidity of Each Claim of U.S. Patent No. 5,631,953 for Claiming Both

an Apparatus and a Method.  For the following reasons, the Motion is denied.

I.      **STATEMENT OF FACTS**

A.      **The Patent**

The patent involved in this case is U.S. Patent No. 5,631,953 ("the '953 Patent"), which

claims a system or apparatus.  (Def.'s Mot. Summ. J., Ex. 1 ("953 Patent"); Def.'s Statement of

Undisputed Facts ("DSUF") ¶ 1; Pl.'s Statement of Undisputed Facts ("PSUF") ¶ 1.)  This Patent

recites eight claims, claim 1 of which states as follows:

> A circuit arrangement for integration of EDP systems in utilization of telephone
> systems connected to a public ISDN or Euro ISDN telephone network,
>
> the circuit arrangement comprising a plurality of telephone extensions which are
> directly connectable to a telephone network selected from the group consisting of a
> public ISDN telephone network and Euro ISDN telephone network;

a first line;

an intelligent telephone system arranged so that said telephone extensions are connectable with said at least one telephone network through said first line and said intelligent telephone system;

a plurality of personal computers;

an integration element arranged between said intelligent telephone system and said personal computers,

said integration element receiving signals via at least one connection element selected from the group consisting of an SDLC connection element and an ISDN connection element via a second line from said at least one telephone network via said intelligent telephone system and sending back signals to said at least one telephone network,

said integration element also sending a data record assigned an appropriate information via a third line, via a LAN connected to a LAN server by a fourth line and via a fifth line to said personal computers again;

a computing system; and

a software layer arranged so that conversion of the signals into a data record and vice versa is carried by said integration element, by said computing system by said software layer and by said at least one connection element with an internal software.

('953 Patent, col. 5, line 52–col., 6 line 12.)

In addition claim 2 states:

A circuit arrangement as defined in claim 1, wherein said personal computers are provided with keyboards so that a speech or data communication between a caller via said at least one telephone network and a competent party on one of said telephone extensions with a respectively assigned one of said personal computers is sent to another competent party and back after the respective competent party has sent a data record assigned the appropriate information to said integration element by operating said keyboard of the respectively assigned one of said personal computers, and a necessary signal leaving said integration element is applied at said intelligent telephone system and a connection to at least one another telephone extension is established, so that a connection to every telephone extension simultaneously provides an immediate integration of said personal computer assigned to said telephone extension in the established speech and data communication.

(Id. col. 6, lines 13–29.)

Claim 3 states:

A circuit arrangement as defined in claim 1, wherein said personal computers are provided with keyboards so that a speech or data communication between a caller via said at least one telephone network and a competent party on one of said telephone extensions with a respectively assigned one of said personal computers is sent to another competent party and back after the respective competent party has sent a data record assigned the appropriate information to said integration element by operating said keyboard of the respectively assigned one of said personal computers, and a necessary signal leaving said integration element is applied at said intelligent telephone system and a connection to all said telephone extensions is established, so that a connection to every telephone extension simultaneously provides an immediate integration of said personal computer assigned to said telephone extension in the established speech and data communication.

(Id. col. 6, lines 30–46.)

In addition, claim 4 recites:

A circuit arrangement as defined in claim 2, wherein said integration element is formed so that it is possible to hold an applied speech and data communication in conference where required together with at least one further competent party.

(Id. col. 6, lines 47–51.)  Notably, claims 2–3 and 6–8 each depend directly from claim 1 and,

claims 4 and 5 depend from claim 2.  (DSUF ¶ 5; PSUF ¶ 5.)

Claims 5 and 6 go on to disclose:

5.    A circuit arrangement as defined in claim 2, wherein said integration element is formed so that data are transferable when a speech and data communication has been established by every competent part [sic] even during a conference and by all competent parties both to and from a caller to every participating competent party and between the competent parties with and without a caller.

6.    A circuit arrangement as defined in claim 1, wherein said integration element is formed so that data are transferable when a speech and data communication has been established by every competent part [sic] even during a conference and by all competent parties both to and from a caller to every participating competent party and between the competent parties with and without a caller.

3

(Id. col. 6, lines 52–62.)

Finally, claims 7 and 8 recite the following:

> 7.   A circuit arrangement as defined in claim 1, wherein said integration element is formed so that in addition to the speech and data communication, a fax transmission is made simultaneously between the respective competent party and the caller using the keyboard of a respective one of said personal computers by using the connection of the respective personal computer with said at least one telephone network via said fixed line with the LAN with inclusion of the LAN server via said fourth line, via said third line with the integration element comprising said computing system, said software, said at least one connection element with the internal software, and via said second line with the intelligent telephone system.

> 8.   A circuit arrangement as defined in claim 1, wherein said integration element is formed so that in addition to the speech and data communication, a fax transmission is made parallel between the respective competent party and the caller using the keyboard of a respective one of said personal computers by using the connection of the respective personal computer with said at least one telephone network via said fixed line with the LAN with inclusion of the LAN server via said fourth line, via said third line with the integration element comprising said computing system, said software, said at least one connection element with the internal software, and via said second line with the intelligent telephone system.

(Id. col. 6, line 63–col. 8, line 9.)

**B.     General Description of Technology at Issue**

In the simplest of terms, the technology in this case concerns circuit arrangements of hardware and software that allow the integration of speech (telephone systems) with data systems.  These systems permit agents in customer service call centers to obtain information from their personal computer about the person calling for assistance at the same time he or she takes the call.  As explained by the parties' experts at the Markman hearing, when a person calls a customer service center, the technology inputs the caller's telephone number into a computer system which converts it into a computer-readable request.  The server then processes the request, obtains information about the customer calling, and creates a "screen pop," wherein the

various information about that particular customer will automatically appear on the screen of the agent's personal computer at the same time the agent answers the call.  (N.T. June 7, 2011, 18:21–24:25, 59:12–63:24.)  The agent may then use his or her personal computer to make requests from a centrally shared server—which stores all the data about the clients—to obtain additional information, transfer the customer to another agent, or conference in another agent.  (N.T. June 7, 2011, 26:5–28:8, 58:9–59:10.)  Both parties have agreed that the technology runs on what is called a client/server architecture, wherein the agent's personal computer ("the client") runs the customer service application and the database server answers requests from the client to get data.  (N.T. June 7, 2011, 24:14–20.)  This is distinct from the host/terminal architecture, wherein the host runs and controls the application and holds all the data, and the agent's terminal is simply an input and output device.  (N.T. June 7, 2011, 21:8–23:12.)

> ### C.    Brief Patent History

The U.S. application which led to the '953 patent was filed on August 25, 1995.  (PSUF ¶ 19.)  The United States Patent & Trademark Office ("USPTO") allowed the claims as set forth in the '953 Patent.  (PSUF ¶ 14; Decl. of Bruce Koch ("Koch Decl."), Ex. 1.)  Ultimately the '953 patent issued on May 20, 1997.  (PSUF ¶ 20.)

> ### D.    Procedural History

Plaintiff CSB-System International, Inc. ("CSB") brought the present patent action against Defendant SAP America, Inc. ("SAP") in this Court on May 11, 2010, alleging that one of Defendant's products infringes on the '953 Patent held by Plaintiff.  The parties submitted extensive briefing on several disputed claim terms and proceeded to a one-day Markman hearing on June 7, 2011, at which time each side offered a short tutorial and the testimony of an expert

witness.  Thereafter, on July 27, 2011, the Court issued a lengthy opinion construing each of the disputed claims, but declining to rule on SAP's claims of indefiniteness until the summary judgment stage.

On August 12, 2011, SAP filed the current Motion for Summary Judgment of Invalidity of Each Claim of U.S. Patent No. 5,631,953 for Claiming Both an Apparatus and a Method. Plaintiff CSB responded on September 6, 2011, and the parties each submitted additional briefing on September 20 and 23, 2011.  Immediately upon completion of briefing, the case was referred to Magistrate Judge Jacob P. Hart for settlement discussions and, as such, the present Motion was stayed.  When the settlement talks became fruitless, the parties re-commenced filing dispositive motions, resulting in a combined total of eleven motions for summary judgment from the two parties.  Briefing on these motions was completed on March 12, 2012, making their merits ripe for judicial review.  The present Memorandum addresses only the allegation of invalidity for claiming both an apparatus and a method.

## II.    STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv.

Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cnty of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims."  Id. at 325.  Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec., 475 U.S. at 586.  "[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Moreover, the mere existence of some evidence in support of the non-movant

will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue.  Anderson, 477 U.S. at 249–50.

## III.   DISCUSSION

Defendant SAP presently moves for summary judgment on the ground that the '953 Patent is invalid for indefiniteness.  More specifically, it argues that the claims of the '953 Patent include both system and method limitations, which, under well-established patent law, renders them indefinite.

### A.   Standard of Review of a Claim of Indefiniteness

The Patent Act requires that each claim in a patent "particularly point[ ] out and distinctly claim[ ] the subject matter which the applicant regards as his invention."  35 U.S.C. § 112 (2006).  "If a claim fails to reasonably apprise one skilled in the art of the boundaries of the claim when read in light of the specification, then the claim is invalid under § 112 for indefiniteness." Amgen Inc. v. F. Hoffman-LA Roche Ltd., 580 F.3d 1340, 1371 (Fed. Cir. 2009) (citing Praxair, Inc. v. ATMI, Inc., 543 F.3d 1306, 1319 (Fed. Cir. 2008)).  "A determination that a patent claim is invalid for failure to meet the definiteness requirement of 35 U.S.C. § 112 [¶ 2] is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims [.]"  Biomedino, LLC v. Waters Techs. Corp., 490 F.3d 946, 949 (Fed. Cir. 2007) (quotation omitted).  As explained by the United States Court of Appeals for the Federal Circuit,

> [t]he primary purpose of the definiteness requirement is to ensure that the claims are written in such a way that they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, e.g., competitors of the patent owner, can determine whether or not they infringe.

All Dental Prodx, LLC v. Advantage Dental Prods., Inc., 309 F.3d 774, 779–80 (Fed. Cir. 2002)

(citing Warner–Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 28–29 (1997)).  In other

words,

> [a] patent holder should know what he owns, and the public should know what he
> does not.  For this reason, the patent laws require inventors to describe their work in
> "full, clear, concise, and exact terms," 35 U.S.C. § 112, as part of the delicate balance
> the law attempts to maintain between inventors, who rely on the promise of the law
> to bring the invention forth, and the public, which should be encouraged to pursue
> innovations, creations, and new ideas beyond the inventor's exclusive rights.

Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 731 (2002).

In order to determine whether the definiteness requirement has been met, the reviewing

court must construct the claims "according to the familiar canons of claim construction."  All

Dental Prodx., 309 F.3d at 780.  As with other construction issues, the focus of indefiniteness

rests on the meaning that claim terms would have to one of ordinary skill in the art.  Energizer

Holdings, Inc. v. Int'l Trade Comm'n, 435 F.3d 1366, 1370 (Fed. Cir. 2006).  Thus, a claim is

deemed sufficiently definite, only if "one skilled in the art would understand the bounds of the

claim when read in light of the specification."  Exxon Research & Eng'g Co. v. U.S., 265 F.3d

1371, 1375 (Fed. Cir. 2001).  "Even if a claim term's definition can be reduced to words, it is

still indefinite if a person of ordinary skill in the art cannot translate the definition into

meaningfully precise claim scope."  Halliburton Energy Servs., Inc. v. M-I LLC, 514 F.3d 1244,

1251 (Fed. Cir. 2008).  Claims that are "not amenable to construction" or are "insolubly

ambiguous" are indefinite.  Id. at 1250 (quoting Datamize, LLC v. Plumtree Software, Inc., 417

F.3d 1342, 1347 (Fed. Cir. 2005)).  Stated differently, a claim term is indefinite if the patent does

not provide an "objective anchor" or "yardstick against which potential infringers may measure

their activities." Automated Transactions LLC v. IYG Holding Co., No. Civ.A.06-043, 2011 WL 810237, at *8 (D. Del. Mar. 4, 2011) (quoting Girafa.com, Inc. v. IAC Search & Media, Inc., No. Civ.A.07-787, 2009 WL 30747121, at *2 (D. Del. Sept. 25, 2009)).

Notably, however, an issued patent is presumed valid and, therefore, invalidity must be proven by clear and convincing evidence. 35 U.S.C. § 282; Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1365 (Fed. Cir. 2004). As a general rule, the Federal Circuit has taken a narrow approach to indefiniteness:

> We have not insisted that claims be plain on their face in order to avoid condemnation for indefiniteness; rather, what we have asked is that the claims be amenable to construction, however difficult that task may be. If a claim is insolubly ambiguous, and no narrowing construction can properly be adopted, we have held the claim indefinite. If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds.

Exxon Research, 265 F.3d at 1375.

### B. Whether the Claims of the '953 Patent are Indefinite

Defendant now argues that each of the claims of the '953 Patent are invalid because they include both system and method limitations. Plaintiff responds, however, that the plain reading of the claims reveals disclosure of only a circuit arrangement—*i.e.*, an apparatus—that does not require any use be made or action to be taken for infringement.

It is well established that "[a] patent application is free to recite features of an apparatus either structurally or functionally." In re Schreiber, 128 F.3d 1473, 1478 (Fed. Cir. 1997); see also In re Swinehart, 439 F.2d 210, 212 (C.C.P.A. 1971)) ("[T]here is nothing intrinsically wrong with [defining something by what it does rather than what it is] in drafting patent claims.").

10

"Yet, choosing to define an element functionally, *i.e.,* by what it does, carries with it a risk." <u>Id.</u> "Because a method and an apparatus represent two different statutory classes of invention, the combination of the two classes into a single claim creates ambiguity." <u>Leader Techs., Inc. v. Facebook, Inc.</u>, 770 F. Supp. 2d 686, 708 (D. Del. 2011). For example, when the two claims are combined, "a manufacturer or seller of the claimed apparatus would not know from the claim whether it might also be liable for contributory infringement because a buyer or user of the apparatus later performs the claimed method of using the apparatus." <u>IPXL Holdings, L.L.C. v. Amazon.com, Inc.</u>, 430 F.3d 1377, 1384 (Fed. Cir. 2003). Thus, this type of hybrid claim "is not sufficiently precise to provide competitors with an accurate determination of the 'metes and bounds' of protection involved" and, therefore, such claims are invalid as indefinite under 35 U.S.C. § 112, ¶ 2. <u>Id.</u> (quotations omitted).

In a pair of key cases, the Federal Circuit has sought to define the bounds of the law regarding the co-mingling of different types of patentable subject matter within one claim. First, in <u>IPXL Holdings, L.L.C. v. Amazon.com, Inc.</u>, the Federal Circuit expressly held that when a claim impermissibly mixes both an apparatus and a method, the claim is indefinite. 430 F.3d at 1384. In so holding, the court struck down a claim reciting "a system of claim 2 [including an "input means"] wherein . . . the user uses the input means to either change the predicted transaction information or accept the displayed transaction type and transaction parameters." <u>Id.</u> The court held that the claim was indefinite because the claim recited both an apparatus (the "system") and a method for using that system ("the user *uses* the input means . . . "). <u>Id.</u> The court concluded that because it was unclear whether infringement of the claim occurs "when one creates a system that allows the user to change the predicted transaction information or accept the

11

displayed transaction, or . . . when the user actually uses the input means to change transaction

information or uses the input means to accept a displayed transaction." Id.  Because the patent at

issue seemed to recite both, the court found that it did "not apprise a person of ordinary skill in

the art of its scope."  Id.

The Federal Circuit, however, clarified and narrowed the scope of its IPXL Holdings

decision in the 2008 case of Microprocessor Enhancement Corp. v. Texas Instruments, Inc., 520

F.3d 1367 (Fed. Cir. 2008).  In that matter, the court considered a patent directed to computer

processor architecture and methods for increasing microprocessor efficiency.  Id. at 1369.  The

district court rejected one of the claims[1] on the ground that the claim appeared to cover both an

_____

[1]  Claim 7 of the challenged patent recited an apparatus claim, as follows:

A pipelined processor for executing instructions comprising:

a conditional execution decision logic pipeline stage, a[t] least one instruction
execution pipeline stage prior to said conditional execution decision logic pipeline
stage;

at least one condition code;

said instructions including branch instructions and non-branch instructions and
including opcodes specifying operations, operand specifiers specifying operands, and
conditional execution specifiers;

the pipelined processor further including at least one write pipeline stage for writing
the result(s) of each instruction to specified destination(s);
at least one of the instructions including a means for specifying writing said condition
code with a condition code result;

the conditional execution decision logic pipeline stage performing a boolean
algebraic evaluation of the condition code and said conditional execution specifier
and producing an enable-write with at least two states, true and false;

said enable-write when true enabling and when false disabling the writing of
instruction results at said write pipeline stage;

apparatus and a method for using that apparatus.  Id. at 1374.  Reversing, the Federal Circuit held

that the mere fact that an apparatus claim includes functional language does not necessarily

render the claim indefinite.  Id. at 1375.  Specifically, it reasoned that:

> [T]he use of functional language in a claim may "fail 'to provide a clear-cut
> indication of the scope of subject matter embraced by the claim' and thus can be
> indefinite." Claim 7 of the '593 patent, however, is clearly limited to a pipelined
> processor possessing the recited structure and *capable* of performing the recited
> functions, and is thus not indefinite under IPXL Holdings.

Id. at 1375 (emphasis in original).  "Thus, after the Microprocessor Enhancement Corp. decision,

an apparatus claim may state that the apparatus is capable of performing particular functions.  It

cannot, however, include functional limitations that create ambiguity as to when the mixed

subject matter claim has been infringed, as was the case in IPXL Holdings."  Aventis Pharma

S.A. v. Hospira, Inc., 743 F. Supp. 2d 305, 328–329 (D. Del. 2010), appeal dismissed, 637 F.3d

1341 (Fed. Cir. 2011).

---

> fetching means for fetching source operands specified by said operand specifiers;
> operating means for performing the operation specified by said opcode;
> condition code fetching means for fetching the condition code, when specified by the
> conditional execution specifier, at the pipeline stage immediately preceding the
> conditional execution decision logic;
>
> the conditional execution decision logic pipeline stage, when specified by the
> conditional execution specifier, determining the enable-write using the boolean
> algebraic evaluation;
>
> writing means for writing said non-branch instruction results to a destination
> specified by the operand specifiers and writing to the condition code when specified,
> if enable-write is true; and
>
> said writing means further for discarding or not writing the non-branch instruction
> results and discarding or not writing the condition code, if enable-write is false.

Id. at 1371–72.

In the present case, Defendant argues that claim 1 of the '953 Patent purports to be directed to a system by beginning with the language, "[a] circuit arrangement" and including several system elements, such as a plurality of telephone extensions, a first line, an intelligent telephone system, and an integration element.  Claim 1, however, also includes several active use steps, as highlighted in the following recitation:

> A circuit arrangement . . . comprising . . .
>
> ***said integration element receiving signals*** via at least one connection element selected from the group consisting of an SDLC connection element and an ISDN connection element via a second line from said at least one telephone network via said intelligent telephone system ***and sending back signals*** to said at least one telephone network,
>
> ***said integration element also sending a data record*** assigned an appropriate information via a third line, via a LAN connected to a LAN server by a fourth line and via a fifth line to said personal computers again;

('953 Patent, col. 5, line 52–col. 6, line 12 (emphasis added).)  Defendant asserts that, "[i]t is clear from the words of the claim itself that these actions are only carried out when the 'circuit arrangement' is operating; that is, they are not set forth simply as a functional statement of the capability of the integration element, but as the associated activity itself."  (Def.'s Mem. Supp. Mot. Summ. J. 5.)  In other words, Defendant argues that the highlighted claim terms are not merely capabilities, but rather occur only when the system is being used.  Id.  Ultimately, Defendant concludes that "[t]he claim as written is therefore unclear as to whether infringement would occur by assembling the elements of the circuit in the arrangement described by the claim, or only when the circuit arrangement is actually operated such that the integration element is sending and receiving signals and data records."  (Id. at 6.)

Defendant then goes on to contend that the remaining claims suffer from additional

indefiniteness issues.  For example, claims 2 and 3 state, in pertinent part:

> 2.  A circuit arrangement as defined in claim 1, wherein said personal computers are provided with keyboards so that a speech or data communication . . . ***is sent to another competent party and back after the respective competent party has sent a data record*** assigned the appropriate information to said integration element ***by operating said keyboard*** of the respectively assigned one of said personal computers, ***and a necessary signal*** leaving said integration element ***is applied*** at said intelligent telephone system ***and a connection*** to at least one another telephone extension ***is established*** . . .

> 3.  A circuit arrangement as defined in claim 1, wherein said personal computers are provided with keyboards so that a speech or data communication . . . ***is sent to another competent party and back after the respective competent party has sent a data record*** assigned the appropriate information to said integration element ***by operating said keyboard*** of the respectively assigned one of said personal computers, ***and a necessary signal*** leaving said integration element ***is applied*** at said intelligent telephone system and ***a connection to all said telephone extensions is established,*** so that a connection to every telephone extension simultaneously provides an immediate integration of said personal computer assigned to said telephone extension in the established speech and data communication.

(Id. col. 6, lines 13–46 (emphasis added).)  Defendant avers that, "in addition to the flaws incorporated into these claims by their dependency on claim 1, these claims expressly recite further user activity" making it unclear whether any alleged infringement would occur upon creation of the claimed circuit arrangement or only later, upon the action of a person operating the keyboard to cause a data record to be transmitted.  (Def.'s Mem. Supp. Mot. Summ. J. 7.) Further, Defendant asserts that claims 4 and 5 depend directly from claim 2 and claim 6 depends directly from claim 1, meaning that they suffer from all of the aforementioned flaws.

Finally, as to claims 7 and 8, Defendant argues that they depend directly from claim 1 and, thus, are invalid as indefinite for the same reasons as claim 1.  Moreover, they suffer from additional flaws, as reflected in the highlighted portions below:

15

> 7.   A circuit arrangement as defined in claim 1, wherein . . . *a fax transmission is made* simultaneously between the respective competent party and the caller *using the keyboard* of a respective one of said personal computers *by using the connection of the respective personal computer* with said at least one telephone network . . .
>
> 8.   A circuit arrangement as defined in claim 1 . . . *a fax transmission is made* parallel between the respective competent party and the caller *using the keyboard* of a respective one of said personal computers by *using the connection of the respective personal computer* with said at least one telephone network . . .

(Id. col. 6, line 63–col. 8, line 9.)  Once again, according to Defendant, the inclusion of actions of the ultimate user "using the keyboard" renders the claims indefinite because one of ordinary skill in the art is unable to determine whether infringement occurs immediately upon construction of the described apparatus or not until the user undertakes the specifically-recited action step.

Analyzing the claims using the method defined by Federal Circuit jurisprudence, however, this Court must disagree with Defendant's interpretation.  As previously set forth in this Court's Markman opinion in this case, the terms used in patent claims bear a "heavy presumption" that they mean what they say and have their ordinary and customary meaning. Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1202 (Fed. Cir. 2002).  That ordinary meaning "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).  To determine the ordinary meaning of a term, the court should review the same resources as would the person of ordinary skill in the art.  Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1477 (Fed. Cir. 1998).  As such, the ordinary meaning may be derived from a variety of sources including intrinsic evidence, such as the claim language, the written description, drawings, and the prosecution history; as well as extrinsic evidence, such as dictionaries, treatises, or expert

16

testimony.  <u>Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.</u>, 257 F.3d 1364, 1372-73 (Fed. Cir.

2001).  Notably, the "most significant source" of authority is "the intrinsic evidence of record,

i.e., the patent itself, including the claims, the patent specification[2] and, if in evidence, the

prosecution history." <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996);

<u>see also</u> <u>Phillips</u>, 415 F.3d at 1313–14. "[T]he claims themselves provide substantial guidance as

to the meaning of particular claim terms." <u>Phillips</u>, 415 F.3d at 1314.  Both "the context in

which a term is used in the asserted claim" and the "[o]ther claims of the patent in question" are

useful for understanding the ordinary meaning. <u>Id.</u>  Thus, "[t]he construction that stays true to

the claim language and most naturally aligns with the patent's description of the invention will

be, in the end, the correct construction." <u>Renishaw PLC v. Marposs Societa' per Azioni</u>, 158

F.3d 1243, 1250 (Fed. Cir. 1988).

Undoubtedly, the claims of the '953 Patent are poorly drafted, often relying on a strained

and awkward use of the English language.  Nonetheless, a plain reading of such claims makes it

abundantly clear that a person of ordinary skill in the art would understand them to recite only an

architecture of equipment—circuit arrangements of hardware and software that allow the

integration of speech (telephone systems) with data systems to permit agents in customer service

call centers to obtain information from their personal computer about the person calling for

assistance at the same time he or she takes the call—and not a methodology.  The functional

terms act solely as descriptors for the capabilities of this apparatus.  For example, claim 1's

functional language merely indicates the abilities of the claimed architecture—*i.e.*, it must be

---

[2]  The specification is "that part of a patent application which precedes the claim and in
which the inventor specifies, describes, and discloses the invention in detail." <u>McCarthy's Desk
Encyclopedia of Intellectual Property</u> 408 (2d ed. 1995).

able to receive signals via one connection element and sent back signals to at least one connection element.  The same holds true with claims 2 and 3, wherein the circuit arrangement now requires that the personal computers be equipped with keyboards to allow the users to transfer a call and data records to another user or to conference in another user, who will also have access to all pertinent data records.  Likewise, claims 7 and 8 recite a circuit arrangement wherein a fax machine is inserted into the architecture, allowing the user to fax documents or receive faxed documents in connection with the phone call.  Again, the claims encompass a particular hardware and software configuration, which, as provided, must have certain capabilities, regardless of whether those capabilities are put to use.  Read in their entireties and with their plain meanings as set forth in the Markman opinion, claims 1–8 simply describe how certain components must be arranged within the claimed architecture and what functional capabilities must result from that arrangement.  Contrary to Defendant's arguments, the claims of the '953 Patent do not, under any reasonable reading, require that a user use the circuit arrangement, but rather discuss user activities simply to describe the environment in which the claimed configuration operates.  In turn, it is clear that infringement would occur simply upon re-creation of this architecture and not upon a particular usage.

While the plain—albeit awkward—claim language constitutes a sufficient basis upon which the present Motion for Summary Judgment may be denied, the Court's interpretation finds further support in other evidence of record.  First, although not referenced by either party, the Court looks to the specification.  HTC Corp. v. IPCom GmbH & Co., KG, 667 F.3d 1270, 1275 (Fed. Cir. 2012) (noting that, in considering a claim for indefiniteness, a court should consider the specification); see also Renishaw, 158 F.3d at 1248 ("[O]ne may not read a limitation into a

18

claim from the written description, but . . . one may look to the written description to define a term already in a claim limitation, for a claim must be read in view of the specification of which it is a part.").  In the Abstract portion of the specification, the '953 Patent discloses "a circuit arrangement for the integration of EDP systems in the use of telephone installations which are connection to the public ISDN or Euro ISDN telephone systems.  The aim is to connect a telephone installations [sic] to an EDP installation ***in such a way that all the functions of the EDP system <u>can be</u> used during the use of the telephone installation.***"  ('953 Patent, Abstract (emphasis added).)  Notably, nothing requires that the functions actually be used.  Thereafter, when describing the features of the present invention, the specification repeatedly states that the circuit must be "formed so that" or "formed so that it is possible."  ('953 Patent, col. 3, lines 16, 21, 28.)  The specification goes on to repeat that "[t]he advantages of the invention are that a telephone system can be linked to an EDP system in such a way that all functions of the EDP system can be used during utilization of the telephone system."  (<u>Id.</u> at col. 3, lines 41–44.)  This language is in parity with the claim language, confirming that the circuit arrangement is designed to have various degrees of functionality, but that the methods of initiating such functions within a customer call center are not part of the claims.  In the face of this language, Defendant fails to cite any portion of the specification suggesting that the methods are part of the claimed invention.

Second, Plaintiff refers the Court to the prosecution history of the '953 Patent, wherein the USPTO reviewed the claims and, at no point, found mixed classes of claims within that Patent.  As evidenced by the Manual of Patent Examination Procedure in existence during the U.S. prosecution of the '953 Patent, the USPTO acknowledged that "[a] single claim which claims both an apparatus and the method steps of using the apparatus is indefinite under 35

U.S.C. 112, second paragraph." (Koch Decl, Exs. 2 & 3.)  Yet, nothing in the prosecution history available to this Court suggests that the USPTO expressed any concern in this regard to the claims of the '953 Patent.  While Defendant now objects to any consideration of this prosecution history on the grounds that "in *every* instance where a court finds claims invalid for failing to meet the requirements of 35 U.S.C. § 112, the Patent Office had mistakenly allowed the claims to issue," (Def.'s Reply Br. 6 (emphasis in original)), the Court notes that a challenge to a claim's indefiniteness requires review of the prosecution history.  HTC Corp., 667 F.3d at 1276; All Dental Prodx, 309 F.3d at 780; see also Young v. Lumenis, Inc., 492 F.3d 1336, 1347 (Fed. Cir. 2007) (considering absence of PTO action during prosecution of claim with respect to indefiniteness challenge on claim).  While by no means controlling, the USPTO's failure to find, in this case, what Defendant deems to be an obvious and overt indefiniteness problem within the claims of the '953 Patent undermines the strength of Defendant's assertion.[3]

Third, Plaintiff has offered the Declaration of Mark Gaynor, an expert in the field of computers and telephony, and a person of ordinary skill in the art ("POSITA") at the time of the '953 Patent.  (Decl. of Mark Gaynor ("Gaynor Decl.") ¶ 3.)  Mr. Gaynor opines that a POSITA reviewing the specification and claims of the '953 Patent would clearly know that infringement of claims 1–8 of the '953 Patent takes place when the circuit arrangement set forth in the claims is created, and would not believe that infringement occurs when the circuit arrangement is activated.  (Id. ¶ 4.)  He goes on to explain that "[a] POSITA would clearly see that the claims

---

[3]  Defendant vigorously argues that "[t]here is no legitimate dispute that each and every claim of the '953 patent is invalid for failing to meet the requirements of 35 U.S.C. § 112." (Def.'s Reply Br. 9.)  The fact that the USPTO, however, did not see the problem quite as clearly undercuts such vehemence.

claim a circuit arrangement made of several components and that these components need to have certain functional capabilities to be considered a part of the claimed circuit arrangement."  (Id. ¶ 5.)  In support of his opinion, Dr. Gaynor more closely analyzes the language of claim 1.  While Dr. Gaynor's Declaration is otherwise sparse in explanation and certainly cannot outweigh the plain import of the claim language, the Court finds that his interpretation—one which mirrors that of the Court and which is unrefuted by any opposing expert offered by the moving party—provides further support for the Court's independently-reached conclusion.[4]

Defendant's contrary arguments do little to sway this Court.  Defendant relies heavily on Rembrandt Data Technologies, 641 F.3d 1331 (Fed. Cir. 2011).  That case involved a "Fractional Rate Modem with Trellis" which was to be used to more rapidly transfer data and reduce errors in data transmission.  Id. at 1333.  The defendant in that matter argued that claim 3 of that patent, together with dependent claims 4–11, improperly recited both an apparatus and a method. Specifically, claim 3 read:

> A data transmitting device for transmitting signals corresponding to an incoming stream of bits, comprising:
>
> first buffer means for partitioning said stream into frames of unequal number of bits and for separating the bits of each frame into a first group and a second group of bits;

---

[4]  Plaintiff also relies on SAP's answers to Interrogatories as evidence of SAP's concession that the claims of the '953 Patent recite structure followed by their required functionality—i.e., the capabilities required for the structure.  Specifically, when asked to state its basis for non-infringement for each claim, SAP admitted that "this claim limitation is limited to structure having functionality wherein . . ."  (Koch Decl., Ex. 4 at 4 & 11.)  While the Court finds Defendant's concession contradictory to its current vehemence in arguing indefiniteness within the '953 Patent, we remain cognizant that Federal Rule of Civil Procedure 8(d) permits alternative pleading and inconsistent claims or defenses.  Defendant has pled both invalidity and indefiniteness as defenses, meaning that it is entitled to make alternative arguments in support of those defenses.

fractional encoding means for receiving the first group of bits of each frame and performing fractional encoding to generate a group of fractionally encoded bits;

second buffer means for combining said second group of bits with said group of fractionally encoded bits to form frames of equal number of bits;

trellis encoding means for trellis encoding the frames from said second buffer means; and

transmitting the trellis encoded frames.

Id. at 1339.  The Federal Circuit agreed with the defendant's argument, holding that the first four elements recited apparatus elements (buffer means, fractional encoding means, second buffer means, and trellis encoding), while the final element (transmitting the trellis encoded frames) was a method.  Id.  The court then remarked that because "reciting both an apparatus and a method of using that apparatus renders a claim indefinite under section 112, paragraph 2," this claim was invalid for indefiniteness.  Id.  (citing IPXl Holdings, 430 F.3d at 1384).  The plaintiff then asserted that the final limitation should have contained the phrase "transmitter section for" before the limitation "transmitting the trellis coded frames," thereby adding an apparatus with only descriptive functionality and rendering the claim valid.  The court, however, declined to "substantively" redraft the claim, finding that the plaintiff had "not demonstrated that a skilled artisan would have read its proposed language into the claim."[5]  Id.

---

[5]  Defendant cites the district court case of Aventis Pharma, S.A. v. Hospira, Inc., 743 F. Supp. 2d 305 (D. Del. 2010) for substantially the same proposition.  For the same reasons that Court distinguishes Rembrandt, we also distinguish Aventis.
Defendant also references In re Katz Interactive Call Processing Litg., 639 F.3d 1303 (Fed Cir. Cir. 2011), where the Federal Circuit considered an indefiniteness challenge to interactive call processing and call conferencing systems.  Id. at 1308.  The district court found indefiniteness in a patent that covered a system with an "interface means for providing automated voice messages . . . to certain of said individual callers, wherein said certain of said individual callers digitally enter data."  Id. at 1318.  Although, on appeal, the plaintiff argued that the term "wherein" defined a functional capability rather than a method step, the Federal Circuit affirmed,

The present case, on the other hand, does not contain—as Defendant claims—the same "juxtaposition of proper and improper functional claiming." (Def.'s Reply Br. 8.) In <u>Rembrandt</u>, the problematic claim contained five separate elements, four of which were apparatus elements modified by functional terms describing their capabilities, and one of which was an independent method limitation with no apparatus included ("transmitting the trellis encoded frames"). Quite unlike that claim, the claims of the '953 Patent clearly recite only apparatus elements modified by functional terms describing their capabilities. For example:

| Claim # | Apparatus Term | Functional Capabilities |
|---|---|---|
| 1 | "A circuit arrangement comprising a plurality of telephone extensions which are directly connectable to a telephone network . . ." | "said integration element receiving signals via at least one connection element . . . [and] also sending a data record assigned an appropriate information" |
| 2 | "A circuit arrangement as defined in claim 1, wherein said personal computers are provided with keyboards . . ." | "*so that* a speech or data communication . . . is sent to another competent party and back after the respective competent party has sent a data record assigned the appropriate information to said integration element by operating said keyboard . . . and a necessary signal . . is applied at said intelligent telephone system and a connection to all said telephone extensions is established . . ." |
| 3 | "A circuit arrangement as defined in claim 1, wherein said personal computers are provided with keyboards . . ." | "*so that* a speech or data communication . . . is sent to another competent party and back after the respective competent party has sent a data record . . . by operating said keyboard . . . and a necessary signal is applied . . ." |

holding that like the claim in <u>IPXL</u>, the term "wherein" was directed to user actions, not system capabilities. <u>Id.</u> It concluded that the claims "create confusion as to when direct infringement occurs because they are directed both to systems and to actions performed by 'individual callers.'" <u>Id.</u> While somewhat more on par with the issue in this case, the brevity of the Federal Circuit's analysis offers little guidance to this Court in the present matter. Moreover, the claims in that matter clearly contained both method and apparatus limitations, which are not present here.

| 7 | A circuit arrangement as defined in claim 1, wherein said integration element . . ." | "*is formed so that* a fax transmission is made simultaneously between the respective competent party and the caller using the keyboard of a respective one of said personal computers by using the connection of the respective personal computer" |
|---|---|---|
| 8. | A circuit arrangement as defined in claim 1, wherein said integration element . . ." | "*is formed so that* a fax transmission is made . . . using the keyboard of a respective one of said personal computers by using the connection of the respective personal computer with said at least one telephone network . . ." |

In a noticeable distinction from <u>Rembrandt</u>, none of these claims contain any independently standing method limitation that does not grammatically modify a particular apparatus.  Indeed, each claim begins with and re-introduces the circuit arrangement, followed by the enumerated functions.  Moreover, unlike in <u>Rembrandt</u>, it is evident that no skilled artisan would read these claims to understand that the functional terms require some operation of the technology before infringement could occur; rather a POSITA would understand that the mere creation of a circuit arrangement with these capabilities constitutes patent infringement.  While, again, the Court remarks on the inept use of language in these claims, such grammatical clumsiness and poor word choices do not constitute grounds for finding indefiniteness, particularly in view of the Federal Circuit's mandate that indefiniteness be proven by clear and convincing evidence.  The mere fact that the claims failed to use the terminology "capable of" or "intended to"[6] prior to the active terms does not amount to a fatal flaw comparable to that in <u>Rembrandt</u>.[7]

---

[6]  Notably, Defendant concedes that it would have no indefiniteness argument had Plaintiff included those terms.  (Def.'s Mem. Supp. Mot. Summ. J. 10.)

[7]  In an effort to emphasize its point that Defendant repeatedly references testimony from Plaintiff's expert, Dr. Gaynor, wherein the following exchange occurred:

This point was made abundantly clear by the very recent Federal Circuit case of <u>HTC Corp. v. IPCom GmbH & Co., KG</u>, 667 F.3d 1270 (Fed. Cir. Jan. 30, 2012)—a decision that issued after the parties completed their briefing on this Motion.[8]  In that case, the Federal Circuit considered a patent covering a handover (*i.e.*, when a cellular telephone switches from one base station or tower while a person using the telephone travels between coverage areas) designed to reduce the chance of interrupted service.  <u>Id.</u> at 1273.  The main claim at issue recited:

> A mobile station for use with a network including a first base station and a second base station that achieves a handover from the first base station to the second base station by:
>
> storing link data for a link in a first base station,
>
> holding in reserve for the link resources of the first base station, and when the link is to be handed over to the second base station:
>
> initially maintaining a storage of the link data in the first base station,
>
> initially causing the resources of the first base station to remain held in reserve, and
>
> at a later timepoint determined by a fixed period of time predefined at a beginning of the handover, deleting the link data from the first base station and freeing up the resources of the first base station, the mobile station comprising:

---

> Q.     But, in any case, if no call is coming in or if no call is still active on the system, it's not sending and receiving?
>
> A.     No

(Def.'s Mot. Summ. J., Ex. 2, Dep. of Mark Gaynor, 75:5-8, Apr. 20, 2011.)  Defendant argues that because the acts of "sending" and "receiving" occur only when the system is being used, the inclusion of those terms necessarily recites a method as opposed to a capability.  This argument again misunderstands the claimed invention.  A plain reading of the claims indicates that while the functions only occur when the system is being used, the claimed invention is not the actual function but the capability of the disclosed circuit arrangement to perform that function.

    [8] Defendant cites the district court decision in <u>HTC Corp. v. IPCom GmbH & Co. KG</u>, 751 F. Supp. 2d 34 (D.D.C. 2010), as support for its argument that the '953 Patent should be invalid for mixing classes.  This decision, however, was reversed by the Federal Circuit.

an *arrangement for reactivating* the link with the first base station if the handover is
unsuccessful.

Id. (emphasis added).  Rejecting the district court's finding of indefiniteness, the Federal Circuit

looked to the patent's claim language, specification, prosecution history, and extrinsic evidence.

Id. at 1274–77.  It then distinguished IPXL, finding that this claim did not "recite a mobile station

and then have the mobile station perform the six enumerated functions.  The claim[] merely

establish[es] those functions as the underlying network environment in which the mobile station

operates."  Id. at 1277.  Analogizing Microprocessor Enhancement, it went on to find that the

claim at issue made clear that infringement occurred when one made, used, offered to sell, or

sold the claimed apparatus—the mobile station—which must be used in a particular network

environment, and not when a particular method or function was performed.  Id.  Most

importantly, the court noted that the fact that the claim began by reciting an apparatus—a

"mobile station" to be used with a "network"—followed by the functional language, a reader

could assume that the functional language modified the term "network."  Id. at 1274–75.  While

the format of the claim was "unconventional," it was sufficiently clear to apprise a person of

when infringement occurs.  Id. at 1277–78.  In so holding, the court rejected the contention now

advanced by Defendant that a claim must use certain capability language in order to avoid the

indefiniteness problem caused by reciting an apparatus with functional terms.[9]  Id.

---

[9] Numerous district courts addressing this issue have declined to deem indefinite claims
that describe an apparatus, in terms similar to that in the present case, by reference to its
functional capabilities.  See, e.g., WAGO Vermaltunsgesellschaft mbH v. Rockwell Automation,
No. Civ.A.11-756, 2012 WL 775683, at *7 (N.D. Oh. Mar. 7, 2012) (finding that use of a gerund
phrase is permissible functional language that speaks to the modularity of the apparatus rather
than an act performed by a person); Leader Techs., 770 F. Supp. 2d at 710 (recognizing that a
patent applicant is free to recite features of an apparatus either structurally or functionally, and
holding that the disputed language in the present case was "functional in nature, because there is

In sum, the Court finds that Defendant has failed to meet its burden of overcoming, by clear and convincing evidence, the presumption that the '953 Patent is valid.  As repeatedly noted above the claims of the '953 Patent, while written in somewhat tortured English, are clearly amenable to a construction consistent with 35 U.S.C. § 112 and Federal Circuit jurisprudence. Considering both the intrinsic and extrinsic evidence, the Court concludes that a person of ordinary skill in the art would clearly understand the claims to recite an apparatus as defined by its functional capabilities.  No reasonable reading of the patent reveals any inclusion of method limitations.  Accordingly, the claims of the '953 Patent are not invalid for indefiniteness.

## III.   CONCLUSION

For all of the foregoing reasons, the Court must deny Defendant's Motion for Summary Judgment of Invalidity of Each Claim of U.S. Patent No. 5,631,953 for Claiming Both an Apparatus and a Method.  An appropriate Order follows.

---

nothing in the claims that requires the user to perform certain steps or take certain actions for the claim elements to be satisfied. . . . [N]either claim requires the user to use the system described"); Eolas Techs., Inc. v. Adobe Sys., Inc., 810 F. Supp. 2d 795, 813 (E.D. Tex. 2011) ("The claim limitations challenged in this case do not require action.  Instead, they delineate the capability of the claimed apparatuses."); Freedom Wireless, Inc. v. Alltel Corp., No. Civ.A.06-504, 2008 WL 4647270, at *14 (E.D. Tex. Oct. 17, 2008) ("The undersigned construes this claim to be an apparatus claim that describes the apparatus by reference to its functional capabilities. . . .  As such it does not run afoul of IPXL Holdings."); Collegenet, Inc. v. XAP Corp., 442 F. Supp. 2d 1036, 1063 (D. Or. 2006) ("[T]he Court concludes the challenged Claims are not indefinite because they include descriptions of the apparatus and functional limitations associated with the apparatus as did the claims that passed muster in IPXL [Holdings]."); Toshiba Corp. v. Juniper Networks, Inc., No. Civ.A.03-1035, 2006 WL 1788479, at *4 (D. Del. June 28, 2006) ("[C]laims . . . us[ing] functional language to describe the apparatus which is the subject of the claims . . . are not rendered invalid for indefiniteness under the reasoning of IPXL Holdings." ).