**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

CSB-SYSTEM INTERNATIONAL INC.,   :
                                  :      CIVIL ACTION
       Plaintiff/Counterclaim Defendant,   :
                                    :
                         v.              :
                                    :      NO.  10-2156
SAP AMERICA, INC.,                     :
                                    :
       Defendant/Counterclaim Plaintiff.   :

<u>**MEMORANDUM**</u>

BUCKWALTER, S.J.                                       April 25, 2012

Currently pending before the Court is Plaintiff SAP America, Inc.'s ("SAP") Motion for Summary Judgment of No Willful Infringement.  For the following reasons, the Motion is denied.

## I.    STATEMENT OF FACTS

### A.    <u>The Patent</u>

The patent involved in this case is U.S. Patent No. 5,631,953 ("the '953 Patent"), which claims a system or apparatus.  (Def.'s Mot. Summ. J., Ex. A ("953 Patent").)  This Patent recites eight claims, claim 1 of which states as follows:

> A circuit arrangement for integration of EDP systems in utilization of telephone systems connected to a public ISDN or Euro ISDN telephone network,
>
> the circuit arrangement comprising a plurality of telephone extensions which are directly connectable to a telephone network selected from the group consisting of a public ISDN telephone network and Euro ISDN telephone network;
>
> a first line;

an intelligent telephone system arranged so that said telephone extensions are connectable with said at least one telephone network through said first line and said intelligent telephone system;

a plurality of personal computers;

an integration element arranged between said intelligent telephone system and said personal computers,

said integration element receiving signals via at least one connection element selected from the group consisting of an SDLC connection element and an ISDN connection element via a second line from said at least one telephone network via said intelligent telephone system and sending back signals to said at least one telephone network,

said integration element also sending a data record assigned an appropriate information via a third line, via a LAN connected to a LAN server by a fourth line and via a fifth line to said personal computers again;

a computing system; and

a software layer arranged so that conversion of the signals into a data record and vice versa is carried by said integration element, by said computing system by said software layer and by said at least one connection element with an internal software.

('953 Patent, col. 5, line 52–col. 6, line 12.)

In the simplest of terms, the technology in this case concerns circuit arrangements of hardware and software that allow the integration of speech (telephone systems) with data systems.  These systems permit agents in customer service call centers to obtain information from their personal computer about the person calling for assistance at the same time he or she takes the call.  As explained by the parties' experts at the Markman hearing, when a person calls a customer service center, the technology inputs the caller's telephone number into a computer system which converts it into a computer-readable request.  The server then processes the request, obtains information about the customer calling, and creates a "screen pop," wherein the various information about that particular customer will automatically appear on the screen of the

agent's personal computer at the same time the agent answers the call.  (N.T. June 7, 2011, 18:21-24–24:25, 59:12–63:24.)  The agent may then use his or her personal computer to make requests from a centrally shared server—which stores all the data about the clients—to obtain additional information, transfer the customer to another agent, or conference in another agent.  (Id. at 26:5–28:8, 58:9–59:10.)  Both parties have agreed that the technology runs on what is called a client/server architecture, wherein the agent's personal computer (the client) runs the customer service application and the database server (the server) answers requests from the client to get data.  (Id. at 24:14–20.)  This is distinct from the host/terminal architecture, wherein the host runs and controls the application and holds all the data, and the agent's terminal is simply an input and output device.  (Id. at 21:8–23:12.)

The U.S. application which led to the '953 patent was filed on August 25, 1995.  The United States Patent & Trademark Office ("USPTO") allowed the claims as set forth in the '953 Patent.  Ultimately the '953 patent issued on May 20, 1997.

### B.    The Accused Product

The accused products are the SAPphone Interface and the Integrated Communication Interface ("ICI") (collectively the "Accused Products").  The SAPphone was first introduced to the market in 1998.  (Pl. Resp. Opp'n Mot. Summ. J., Ex. 14.)  Subsequently, SAP developed the ICI, the successor product to SAPphone, and began to market it in 2003.  (Id.)

### C.    Procedural History

Plaintiff CSB-System International, Inc. ("CSB") brought the present patent action against Defendant SAP in this Court on May 11, 2010, alleging that the Accused Products infringe on the '953 Patent held by Plaintiff.  The parties submitted extensive briefing on several

3

disputed claim terms and proceeded to a one-day Markman hearing[1] on June 7, 2011, at which time each side offered a short tutorial and the testimony of an expert witness.  Thereafter, on July 27, 2011, the Court issued a lengthy opinion construing each of the disputed claims, but declining to rule on SAP's claims of indefiniteness until the summary judgment stage.  This Order adopted, in large part, the definitions proposed by Defendants.  CSB-Sys. Int'l v. SAP Am., Inc., No. Civ.A.10-2156, 2011 WL 3240783 (E.D. Pa. July 28, 2011).

Defendant filed the present Motion for Summary Judgment as to Plaintiff's claim of willful infringement on January 24, 2012, along with a multitude of other motions.  Plaintiff responded on February 10, 2012, and Defendant filed its Reply Brief on February 21, 2012, making the Motion ripe for judicial review.

## II.      STANDARD OF REVIEW ON SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.

_____

[1]  See Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995).

Boyle v. Cnty of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts.,
Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must
consider the evidence, and all reasonable inferences which may be drawn from it, in the light
most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg
Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the
evidence presented by both sides, the court must accept as true the allegations of the non-moving
party, and "all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

Although the moving party must establish an absence of a genuine issue of material fact,
it need not "support its motion with affidavits or other similar materials negating the opponent's
claim."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing
out . . . that there is an absence of evidence to support the nonmoving party's claims."  Id. at
325.  Once the movant has carried its initial burden, the opposing party "must do more than
simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec., 475
U.S. at 586.  "[T]he non-moving party must rebut the motion with facts in the record and cannot
rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley
Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).  If the non-moving party "fails to
make a showing sufficient to establish the existence of an element essential to that party's case,
and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex,
477 U.S. at 322.  Moreover, the mere existence of some evidence in support of the non-movant
will not be adequate to support a denial of a motion for summary judgment; there must be
enough evidence to enable a jury to reasonably find for the non-movant on that issue.  Anderson,

5

477 U.S. at 249–50.

## III.   DISCUSSION

The present Motion focuses entirely on Plaintiff's claim that Defendant willfully infringed on the '953 Patent.  Pursuant to 35 U.S.C. § 284, a patentee may recover from an infringer enhanced damages which allows the court to "increase the damages up to three times the award found or assessed."  35 U.S.C. § 284.  Such an award is punitive in nature and "depends on a showing of willful infringement or other indicium of bad faith warranting punitive damages."  Id.  "Although willful infringement may authorize the award of enhanced damages, a finding of willful infringement does not mandate treble damages."  Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp., 585 F. Supp. 2d 636, 642 n.40 (D. Del. 2008) (internal quotations omitted).  Rather, that decision rests with the district court under 35 U.S.C. § 284.  i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831 (Fed. Cir. 2010), aff'd, 131 S. Ct. 2238 (2011).

The mere finding that infringement exists does not equate to a finding that willful infringement has occurred, even where the accused has knowledge or is aware of the patent.  See Comark Commc'ns., Inc. v. Harris Corp., 156 F.3d 1182, 1190 (Fed. Cir. 1998).  In In re Seagate Tech., LLC, 497 F.3d 1360 (Fed. Cir. 2007), the United States Court of Appeals for the Federal Circuit enunciated a new two-part test required for willful infringement.  First, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  Id. at 1371.  The state of mind of the infringer is irrelevant to this entirely objective inquiry.  Id.  Rather, "'[i]t is a high risk of harm, objectively assessed, that is the essence of recklessness at common law.'"  Id. (quoting Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 69 (2007)).  Under Seagate's objective

6

standards, "both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent." Black & Decker, Inc. v. Robert Bosch Tool Corp., 260 F. App'x 280, 291 (Fed. Cir. 2008); see also Spine Solutions, Inc. v. Medtronic Sofamor Danek, Inc., 620 F.3d 1305, 1319 (Fed. Cir. 2010) (holding that objective prong is generally not met "where an accused infringer relies on a reasonable defense to a charge of infringement"). This holds true even if defenses to infringement, including claim constructions, are unsuccessful, so long as they are legitimate or reasonable. Arlington Indus. v. Bridgeport Fittings, Inc., 692 F. Supp. 2d 487, 504 (M.D. Pa. 2010).

Notably, the objective test focuses on facts and circumstances available to the accused at the time the action under scrutiny was taken. i4i Ltd. P'ship v. Microsoft Corp., 670 F. Supp. 2d 568, 581 (E.D. Tex. 2009), aff'd, 598 F.3d 831 (Fed. Cir. 2010). "As a consequence, the number of creative defenses that [an accused] is able to muster in an infringement action after years of litigation and substantial discovery is irrelevant to the objective prong of the Seagate analysis." Id. at 581–82. Rather, the correct analysis focuses on whether, "given the facts and circumstances prior to [the accused's] infringing actions, a reasonable person would have appreciated a high likelihood that acting would infringe a valid patent." Id. at 582. "Should the court determine that the infringer's reliance on a defense was not objectively reckless, it cannot send the question of willfulness to the jury, since proving the objective prong is a predicate to consideration of the subjective prong." Powell v. Home Depot U.S.A., Inc., 663 F.3d 1221, 1236 (Fed. Cir. 2011).

"If this threshold objective standard is satisfied, the patentee must also demonstrate that

this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." Seagate, 497 F.3d at 1371.  The subjective prong "hinges both on the fact finder's assessment of the credibility of witnesses and on the fact finder drawing inferences from the evidence presented to it."  LG Elecs. U.S.A., Inc. v. Whirlpool Corp., 798 F. Supp. 2d 541, 557 (D. Del. 2011). While no affirmative duty to obtain the opinion of counsel exists, "an infringer's reliance on favorable advice of counsel . . . is not dispositive of the willfulness inquiry."  Bard Peripheral Vascular, Inc. v. W.L. Gore Assoc., Inc., 670 F.3d 1171, 1190 (Fed. Cir. 2012) (quoting Seagate, 497 F.3d at 1369).

Ultimately, "[a] finding of willfulness requires the fact-finder to find that clear and convincing evidence shows 'that the infringer acted in disregard of the patent . . . [and] had no reasonable basis for believing it had a right to do the acts.'"  Am. Med. Sys., Inc. v. Med. Engineering Corp., 6 F.3d 1523, 1530 (Fed. Cir. 1993) (quoting Stickle v. Heublein, Inc., 716 F.2d 1550, 1565 (Fed. Cir. 1983)).  This is a factual determination to be made on the basis of the totality of the circumstances.  Id.  In doing so, the court must consider mitigating or ameliorating circumstances.  Id.

In the case at bar, Defendant rests its claim of no willful infringement solely on the objective prong of the Seagate test.  Specifically, it argues that there is no "objectively high likelihood" that it took actions constituting infringement of a valid patent due to valid defenses of invalidity and non-infringement—several of which were framed in pending summary judgment motions.  Defendant goes on to assert that even assuming it does not succeed on those defenses, the questions presented under such defenses are "close," thereby making them objectively

8

reasonable for purposes of defeating a claim of willful infringement.  Because Plaintiff cannot

meet this objective prong, Defendant concludes that the Court need not consider the subjective

prong of the Seagate analysis.

In an effort to avoid summary judgment on this issue, Plaintiff sets forth five main

arguments.  First, it contends that Defendant's Motion is premature.  Second, it asserts that,

contrary to Defendant's argument, it does not bear the burden on summary judgment or proving

that every one of Defendant's defenses to liability is objectively baseless as a matter of law.

Third, it contends that the two summary judgment motions of invalidity and non-infringement

have no merit and, as such, are not reasonable defenses.  Fourth, it argues that Defendant's prior

art defenses were not available at the time of the alleged infringement and, in any event, are not

unequivocally reasonable.  Finally, it avers that additional evidence exists to support the

subjective prong of Seagate.  The Court considers these arguments in turn.

### A.      **Whether Defendant's Motion is Premature**

Plaintiff first asserts that SAP's Motion is premature because willful infringement is a

question of fact based on the totality of the circumstances.  It further argues that it plans to

present substantial evidence at trial to prove that Defendant's infringement of the '953 Patent has

been willful.  Accordingly, any ruling by the Court during summary judgment proceedings would

improperly foreclose Plaintiff's opportunity to present the entirety of its case.

The Court disagrees.  Summary judgment is appropriate where there is no genuine issue

of material fact as to a particular issue, regardless of whether that issue is factual or legal in

nature.  Fed. R. Civ. P. 56; see also Solvay, S.A. v. Honeywell Specialty Materials LLC, No.

Civ.A.06-557, 2011 WL 3792394, at *7 (D. Del. Aug. 26, 2011) (granting motion for summary

judgment of no willful infringement where the plaintiff had not presented evidence sufficient to support a finding of willfulness under <u>Seagate</u>).  Although Plaintiff is correct that willful infringement is a question of fact determined based on the totality of the circumstances, a defendant may nonetheless succeed in a summary judgment motion by proving that the plaintiff has failed to produce any facts suggesting a possibility of willful infringement.  <u>See</u> <u>Wis. Alumni Research Found. v. Intel Corp.</u>, 656 F. Supp. 2d 898, 923 (W.D. Wis. 2009) ("[N]othing in <u>Seagate</u> suggests that a court cannot decide before trial whether a given defense undermines a finding of 'objectively high likelihood that [defendant's] actions constituted infringement of a valid patent.'").

In the present case, Defendant's Motion rests entirely on the objective prong of the <u>Seagate</u> test by asserting that it has reasonable and legitimate defenses to infringement.  The Court has already ruled upon two of Defendant's substantive summary judgment motions, thereby making a determination of their reasonableness feasible.  Where Defendant relies on defenses that are not part of a pending summary judgment motion, the Court must look at the present record and determine whether a genuine issue of material fact exists as to the objective reasonableness of those defenses.  To the extent an issue of fact remains, summary judgment would not be appropriate and the question of willful infringement will remain for the jury's consideration.  To the extent, however, that Defendant clearly establishes the reasonableness of those defenses, the Court may appropriately grant summary judgment and eliminate this cause of action from the case.  Accordingly, the Court rejects Plaintiff's prematurity argument.

**B.      Whether Plaintiff Must Prove that Every One of Defendant's Defenses to Liability is Objectively Baseless**

Plaintiff next takes issue with the underlying premise of Defendant's Motion: that "if a patentee cannot prove that every one of the accused infringer's defenses to liability is objectively baseless, then, as a matter of law, willfulness cannot be found."  (Def.'s Mem. Supp. Mot. Summ. J. 3.)  Defendant claims that because Plaintiff "is unable to establish, much less prove by clear and convincing evidence, that each and every one of SAP's defenses is wholly unreasonable or frivolous," summary judgment is appropriate.  (Id. at 10.)

As set forth above, on summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti, 364 F.3d at 145–46.  Thereafter, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus., 475 U.S. at 587.  Thus, if, as here, the non-moving party carries the burden of persuasion at trial, the party moving for summary judgment may satisfy its initial burden either by showing affirmative evidence negating an essential element of the non-moving party's claim, or showing that the non-moving party's evidence is either absent or insufficient to establish an essential element of her claim.  Celotex, 477 U.S. at 324–25.

Applying this jurisprudence to the present case, the Court finds that Defendant's argument improperly flips the summary judgment standard on its head.  Rule 56 does not require that Plaintiff clearly disprove the validity of every defense that SAP is able to muster at this time. *At trial*, Plaintiff must establish willful infringement by clear and convincing evidence.  *On summary judgment*, however, Plaintiff merely must identify a genuine issue of material fact as to

11

Defendant's willfulness.  Within the context of the present Motion, Plaintiff need only establish

such an issue of fact as to the objective reasonableness of Defendant's liability defenses,

particularly where the defenses themselves are factual in nature.  See Powell, 663 F.3d at

1236–37 ("When the resolution of a particular issue or defense is a factual matter, . . . whether

reliance on that issue or defense was reasonable under the objective prong is properly considered

by the jury.").[2]  The onus falls on Defendant, as the party moving for summary judgment, to

conclusively prove that no factfinder could find such defense objectively unreasonable.  See

Abstrax, Inc. v. Dell, Inc., No. Civ.A.07-221, 2009 WL 3255089, at *3 (E.D. Tex. Oct. 7, 2009)

("In order to prevail on its motion for summary judgment on the grounds of no willful

infringement, Dell must show that did not act with 'objective recklessness.'").  To hold otherwise

would require Plaintiff to come forward with its full arsenal of evidence on a particular issue,

despite the absence of a summary judgment motion on that issue—a result that is neither required

nor desired.  Accordingly, the Court reviews the remainder of Defendant's Motion with the

understanding that Defendant bears the burden of proving no genuine issue of material fact as to

the objective reasonableness of its defenses.

---

[2]  Defendant miscites Powell for the blanket proposition that "[t]he inquiry into whether SAP's defenses and claim construction positions were objectively reasonable is an analysis that **must** be performed by the Court itself."  (Def.'s Reply Br. 6 n.2 (emphasis in original).)  What Powell actually held was that when a particular issue or defense is a matter of law, the question of whether the accused infringer's reliance on that issue or defense was reasonable is a question for the court.  Id. at 1236.  Where, however, the particular issue or defense is a matter of fact, the question of whether the accused infringer's reliance on that issue or defense was reasonable is a question that should be considered by the jury.  Id. at 1236–37.  In this case, Defendant's non-infringement and anticipation defenses are questions of fact.

12

**C.      Whether Defendant's Motions for Summary Judgment for Invalidity and Non-Infringement Are Valid**

Having disposed of these preliminary issues, the Court now turns to the more substantive arguments at hand.  As noted above, Defendant initially contends that it has presented complete liability defenses in the form of two summary judgment motions, one alleging invalidity of the '953 Patent for claiming both an apparatus and a method, and one alleging non-infringement.  It asserts that if it succeeds on either defense, then the issue of willfulness will be moot since no liability can be found.  In response, Plaintiff now challenges this argument on the grounds that neither Motion has merit.

First and foremost, it is crucial to note that subsequent to the parties' briefing, but as of the date of filing of this Memorandum, the Court denied both of Defendant's aforementioned Motions.  With respect to the Motion for Invalidity, the Court expressly found, as a matter of law, that "a person of ordinary skill in the art would clearly understand the claims [of the '953 Patent] to recite an apparatus as defined by its functional capabilities." CSB-Sys. Int'l v. SAP Am., Inc., No. Civ.A.10-2156, 2012 WL 1079986, at *15 (E.D. Pa. Apr. 2, 2012).  The opinion went on to state that, "[n]o reasonable reading of the patent reveals any inclusion of method limitations.  Accordingly, the claims of the '953 Patent are not invalid for indefiniteness." Id.  In doing so, the Court unequivocally held that Defendant's invalidity defense was not reasonable. Id.  No "close" questions of law existed on this issue.  In turn, Defendant has failed to carry its burden, on the present Motion for Summary Judgment, of showing that no factfinder could deem its invalidity defense objectively unreasonable.[3]

_____

[3] Defendant cites to Civix-DDI, LLC v. Cellco P'ship, 387 F. Supp. 2d 869, 902–03 (N.D. Ill. 2005) for the argument that a patentee's failure to move for summary judgment on an

13

As to Defendant's Motion for Summary Judgment of Non-Infringement, the Court also cannot conclusively find, as a matter of law, that this was an objectively reasonable defense. First, despite the presence of over thirty-five limitations in claim 1 of the '953 Patent, Defendant sought summary judgment of non-infringement on only one.  Second, upon thorough consideration of that Motion, the Court expressly denied Defendant's request for relief, finding that Plaintiff had produced enough evidence to create a genuine issue of material fact as to whether the Accused Products infringed on the '953 Patent under the doctrine of equivalents. CSB-Sys. Int'l v. SAP Am., Inc., No. Civ.A.10-2156, 2012 WL 1322894, at *15 (E.D. Pa. Apr. 17, 2012).  In the course of that opinion, the Court determined that although Defendant had managed to identify some weaknesses in Plaintiff's expert report—thereby depriving it of the decisiveness required for obtaining a summary judgment ruling in Plaintiff's favor[4]—that report

accused's defenses is an implicit concession that the defenses are not frivolous.  In that case, however, the court deemed the accused's defenses reasonable based primarily on the fact that they were non-frivolous defenses on which a jury could find in favor of the accused, and not simply on the patentee's failure to seek summary judgment on them.  Id.
    In the present case, it would have been fruitless for Plaintiff to cross-move, particularly given the principle that "[a] determination that a patent claim is invalid for failure to meet the definiteness requirement of 35 U.S.C. § 112 [¶ 2] is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims [.]"  Biomedino, LLC v. Waters Techs. Corp., 490 F.3d 946, 949 (Fed. Cir. 2007) (internal quotation omitted).  As such, a ruling on Defendant's Motion was a conclusive determination that the invalidity defense was baseless.

    [4]  The mere fact that Plaintiff could not meet its burden to succeed on its Motion for Summary Judgment of Infringement does not demonstrate that the question is "close."  The Federal Circuit has held that a denial of a plaintiff's motion of summary judgment as to an accused's defenses based on a remaining factual dispute does not make those defenses reasonable.  DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1337 (Fed. Cir. 2009).  Specifically, it stated that just because "an issue [i]s submitted to a jury does not automatically immunize an accused infringer from a finding of willful infringement . . ." Id.; see also Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd., No. Civ.A.06-1446, 2011 WL 6223047, at *20 (E.D.N.Y. 2011).

was the sole evidence of record regarding the precise equivalence argument at issue.  Id. at

*13–14.  Defendant's own expert offered no probative opinion on the proper infringement

question, but rather opined on an irrelevant equivalence theory.  Id. at *14.  Based on the briefing

submitted in support of those Cross-motions, the Court simply cannot find that Defendant's non-

infringement defense was objectively reasonable, or that the validity of the defense was so

"close" as to warrant summary judgment.

      In sum, Defendant has failed to succeed on either of its dispositive summary judgment

motions.  With respect to its invalidity Motion, the Court found that Defendant's argument had

no legal merit, thereby implicitly deeming it unreasonable.  With respect to the non-infringement

cross-motions, the Court found there to be a clear question of fact under the doctrine of

equivalents.  In so ruling, the Court found only that Plaintiff had failed to conclusively meet its

own burden of proving infringement at that juncture, but did not find any clear contrary evidence

of non-infringement.  To the extent Plaintiff can ultimately succeed at trial on the issue of

infringement, a reasonable juror could also determine that Defendant acted despite an

"objectively high likelihood" that its actions constituted infringement of a valid patent.

Accordingly, the Court rejects this portion of Defendant's argument.

    **D.**   **Whether Defendant's Reliance on the Additional "Reasonable" Defenses**
              **Was Objectively Reckless**

      Plaintiff's next challenges the "additional defenses" proposed by Defendant.  Specifically,

Defendant argues that, even assuming its summary judgment defenses of indefiniteness and

invalidity are not deemed objectively reasonable, it maintains multiple additional prior art

defenses that have already been confirmed by two separate neutral authorities.  First, Defendant's

expert Suresh Gursahaney has set forth detailed opinions, both in his expert reports and in his deposition, that the claims of the '953 patent are invalid under 35 U.S.C. § 102, as anticipated by each of seven different prior art references/systems.  Among other things, Mr. Gursahaney explained that the claims of the '953 Patent were invalid in view of at least three references that were never before the U.S. Patent and Trademark Office ("USPTO") during the prosecution of the '953 Patent,[5] thereby depriving the USPTO of the opportunity to consider them before issuing the '953 Patent.

Second, Defendant claims that foreign patent agencies, when presented with this prior art, found, on three separate occasions, that the invention of the '953 Patent was not patentable.  First, the German patent—the application for which formed the basis of the '953 Patent—became the subject of a cancellation proceeding in the German Patent and Trademark Office.  On February 18, 2010, it was invalidated on the grounds that it was not novel in view of each of (a ) the IBM CallPath CallCoordinator/2 system; and (b) the ECMA TR/52 reference—two of the same references on which Mr. Gursahaney based his anticipation opinion.  Second, a European patent, also based on the same German application, was revoked by the Technical Board of Appeals of the Patent Office in 2005 as invalid because it was not inventive in view of U.S. Patent No. 4,866,758 (Heinzelmann)—another reference invoked by Mr. Gursahaney.  Finally, Defendant notes that three other German patents stemming directly from the same German patent that formed the basis for what became the '953 Patent have all been nullified or withdrawn.[6]

---

[5]  These references are:  (1) the IBM CallPath CallCoordinator/2 system as it existed in 1992; (2) the ECMA TR/52 reference; and (3) U.S. Patent No. 4,866,758 (Heinzelmann).

[6]  Specifically, as argued by Defendant, German patent DE 4330031 was nullified by the German Federal Supreme Court in June 2011.  DE 4406354 and 4447732 were both withdrawn

Because the same art that was used to find the German and European patents invalid applies to, and invalidates, the '953 patent as well, Defendant claims that it would be objectively reasonable to believe that the '953 patent was invalid in view of any one of the pieces of prior art.

In response, Plaintiff does not attempt to conclusively prove, by evidence and legal argument, that these defenses are not objectively reasonable.  Rather, it asserts that (1) these defenses were not available and present at the time when infringement began, *i.e.* 1998; and (2) Defendant has nonetheless not met its own burden of proving that no reasonable jury could dispute the reasonableness of its defenses.

With respect to Plaintiff's first point, it is settled that "the number of creative defenses that [an accused] is able to muster in an infringement action after years of litigation and substantial discovery is irrelevant to the objective prong of the <u>Seagate</u> analysis.  Rather, the correct analysis focuses on whether, *given the facts and circumstances prior to [the accused's] infringing actions*, a reasonable person would have appreciated a high likelihood that acting would infringe a valid patent.''[7]  <u>i4i Ltd. P'ship</u>, 670 F. Supp. 2d at 581–82 (emphasis added); <u>see also</u> <u>Krippelz v. Ford Motor Co.</u>, 675 F. Supp. 2d 881, 886 (N.D. Ill. 2009) ("Claims of willful infringement are governed by the circumstances at each stage of the defendant's infringement.").

In the present case, neither party disputes that the alleged infringement occurred in 1998.

---

from issuance by CSB itself in 1997 and 2005.

[7] Defendant asserts that by considering the circumstances at the time of infringement, the Court would improperly focus on SAP's state of mind in lieu of the objective reasonableness. (Def.'s Reply Br. 2–3.)  This proposition is incorrect.  The Court is required to consider whether, *at the time the infringement occurred*, it was objectively reasonable for an accused in Defendant's position to rely on certain defenses.  To the extent defenses arise during the course of the proceeding that were not reasonably available at the time of the alleged infringement, an accused could not reasonably rely on them.

Yet, none of the proceedings upon which Defendant relies had commenced, let alone concluded, at the time of the alleged infringement.  The German cancellation proceedings began in July 2007, and the German patent was ultimately invalidated on February 18, 2010.  (Def.'s Mot. Summ. J., Ex. E.)  The European patent was originally revoked by the European Patent Office on July 30, 2001 and affirmed by the Technical Board of Appeals of the Patent Office in 2005.  (Id. Ex. F.)  Finally, German Federal Supreme Court did not nullify the subsequent German patent until June 2011.  (Id. Ex. G.)  Accordingly, Defendant stands hard-pressed to argue that it was objectively reasonable to rely on these rulings when developing and marketing the Accused Products.

In an effort to salvage its argument, Defendant asserts that, notwithstanding the fact that these proceedings did not occur until well after the start of the alleged infringement, the prior art invalidity defenses themselves existed as of the issuance of the patent claims.  (Def.'s Reply Br. 3.)  In other words, it contends that the '953 Patent was invalid as of the day it was issued due to prior art that anticipated that Patent, but had not been disclosed to the USPTO.  The mere fact that similar patents were not invalidated until after infringement began did not affect the existence of that defense.  According to Defendant, its position is bolstered by Mr. Gursahaney, who opines that all of the claims of the '953 Patent are invalid under prior art that existed in 1998.

Where this argument fails, however, is in Defendant's inability to present evidence that a reasonable inventor in 1998 would have known about a viable prior art anticipation defense such that it would have not reasonably appreciated a high likelihood of infringing on a valid patent. Indeed, it is well-established that anticipation is a question of fact requiring that a prior art

reference disclose each and every element and limitation, either expressly or inherently of a claimed invention.  See Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc., 45 F.3d 1550, 1554 (Fed. Cir. 1995); In re Gleave, 560 F.3d 1331, 1334 (Fed. Cir. 2009).  Despite this highly fact-intensive inquiry, however, Defendant points to nothing in the record that evidences that the '953 Patent itself—as opposed to related European patents—was the subject of any reexamination requests before the USPTO, that anyone had ever opined that the '953 Patent was anticipated by prior art, or that the USPTO had ever required any amendments to the '953 Patent. Mr. Gursahaney's opinion, propounded well after the alleged infringement occurred, likewise does not bolster Defendant's theory.  Certainly, nothing in this Court's findings shall be deemed to preclude Defendant from offering at trial evidence that, given the facts and circumstances prior to the accused infringing actions, a reasonable person would not have appreciated a high likelihood that acting would infringe a valid patent.  At this juncture, however, absent at least some evidence that this defense was reasonably available in 1998—as opposed to something "muster[ed] . . . after years of litigation and substantial discovery"—the Court cannot find, as a matter of law, that there is no genuine issue of material fact on this question.

Even assuming *arguendo* that such a defense was available at the time of the alleged infringement, an issue of material fact still remains as to whether the prior art defenses are objectively reasonable or whether reliance on them was objectively reckless.  Defendant seems to assume that by merely presenting its defenses, together with a supporting expert opinion, it has met its burden of negating the objective prong of the Seagate test.  The mere presentation of defenses for non-infringement and invalidity, however, does not preclude a finding of willfulness.  Rather, the issue of the reasonableness of those defenses must be resolved.  i4i Ltd.

P'ship, 598 F.3d at 860 ("The fact that Microsoft presented several defenses at trial, including noninfringement and invalidity, does not mean the jury's willfulness finding lacks a sufficient evidentiary basis."). As the Federal Circuit has made clear, "[w]hen the resolution of a particular issue or defense is a factual matter, . . . whether reliance on that issue or defense was reasonable under the objective prong is properly considered by the jury." Powell, Inc., 663 F.3d at 1236–37 (emphasis added). As set forth above, anticipation is question of fact, including whether or not an element is inherent in the prior art. In re Schreiber, 128 F.3d 1473, 1477 (Fed. Cir. 1997). Accordingly, the reasonableness of such a defense, in this case, is properly considered by a jury.

To that end, Defendant's wholehearted reliance on the foreign patent agency decisions and Mr. Gursahaney's report fails to satisfy its summary judgment burden. Defendant argues that "[t]he mere fact that two different expert governmental bodies in Europe have endorsed analogous defenses should be enough to resolve the issue [of the reasonableness of these defenses]." (Def.'s Reply Br. 1–2.) It fails to recognize, however, that such decisions go only to Defendant's subjective belief under the second prong of the Seagate test. Defendant cannot rely on them to establish that its defenses are valid or at least reasonable. See BIC Leisure Prods. v. Windsurfing Int'l, Inc., 1 F.3d 1214, 1223 (Fed. Cir. 1993) ("although *it had no bearing on validity proceedings in this country*, the invalidation of Windsurfing's British patent served to strengthen further BIC's *belief* that the claimed invention was obvious" for purposes of its defense to willful infringement.) (emphasis added); Waddington N. Am., Inc. v. Sabert Corp., No. Civ.A.09-4883, 2011 WL 3444150, at *8 (D.N.J. Aug. 5, 2011) (excluding evidence of foreign in liability stage of trial because "U.S. patent law is distinct from foreign patent law, and the patent itself is a different from its foreign counterparts"). Because Defendant confines its

20

Motion for Summary Judgment to the *objective* prong of the <u>Seagate</u> analysis, these proceedings have no bearing on the objective reasonableness of the prior art defense.

Defendant's citation to Mr. Gursahaney's report fares no better. Defendant has not moved for summary judgment on its prior art defense—perhaps acknowledging its factual nature. In turn, the Court has been deprived of any opportunity to consider the entire factual record available on the merits of this defense. To now litigate the merits under the guise of a motion for summary judgment of no willful infringement would effectively require a motion within a motion. In other words, to hold—as Defendant asks—that its reliance on a prior art defense at the time of infringement was not objectively reckless, the Court would need to review both sides' evidentiary submissions on the prior art defense and then make a determination that the argument has merit or was at least a "close" call. We decline to do so. Had Defendant truly wanted to rely on the reasonableness of this extremely factual defense to avoid trial on the issue of willful infringement, it should have offered the Court the opportunity to review the defense via a prior summary judgment motion.[8]

In short, the Court does not foreclose the possibility that Defendant's prior art defenses

---

[8] Notably, all of the cases cited by Defendant in support of its position that "close" defenses of infringement or invalidity preclude a finding of willfulness under the objective prong were decided after a trial on the merits. <u>See Depuy Spine</u>, 567 F.3d at 1336–37 (affirming district court's judgment as a matter of law as to willful infringement); <u>Saffran v. Johnson & Johnson</u>, No. Civ.A.07-451, 2011 WL 1299607, at *9 (E.D. Tex. Mar. 31, 2011) (granting judgment as a matter of law on the issue of willful infringement after a full trial on the merits and jury verdict); <u>Centocor Ortho Biotech, Inc. v. Abbott Labs</u>, No. Civ.A.07-139, 2009 U.S. Dist. LEXIS 130564, at *14–16 (E.D. Tex. Oct. 1, 2009) (granting judgment as a matter of law on willful infringement after trial on the merits and jury verdict); <u>TGIP, Inc. v. AT&T Corp.</u>, 527 F. Supp. 2d 561, 578–79 (E.D. Tex. 2007) (granting judgment as a matter of law on claim of willful infringement after jury verdict finding such willful infringement). The Court finds, in the present case, that the more prudent approach to the willful infringement issue is to allow it to proceed to a trial on the merits.

may have merit—or at minimum present "close" questions of fact—such that a finding of willful infringement would be inappropriate.  This decision, however, is properly left to a factfinder after consideration of the totality of the circumstances.

>   **E.**      **Whether Plaintiff Has Proven the Subjective Prong of _Seagate_**

In a final argument, Plaintiff claims that, under the second Seagate factor, Defendant knew of this objectively-defined risk and continued to sell the Accused Products.  Specifically, Plaintiff argues that SAP and SAP's parent company have known that CSB accused SAP of infringing patents in the family that includes the '953 Patent from since at least 1998, and that CSB informed SAP that it accused SAP of infringing the actual '953 Patent in 2000.  (Pl.'s Resp. Opp'n Mot. Summ. J., Dep. of Tim Bolte ("Bolte Dep."), 230:20–236:11, Aug. 4, 2011.)  Yet, despite knowing about the '953 Patent and knowing about CSB's infringement accusations due to the SAPphone interface, SAP continued to sell SAPphone in the United States.  Moreover, SAP subsequently developed and marketed its ICI, the successor product to SAPphone.  (Pl.'s Resp. Opp'n Mot. Summ. J., Ex. 14.)  Further, notwithstanding the continued allegations of infringement, SAP never produced an opinion of counsel.  (Pl.'s Resp. Opp'n Mot. Summ. J. 15.)  Such factors, according to Plaintiff, are sufficient to establish that SAP possessed the requisite subjective intent for willful infringement.

Because Defendant rests its Motion entirely on the first, objective prong of Seagate and produces no evidence as to SAP's subjective state of mind, the sole evidence on this issue comes from Plaintiff.  To the extent Plaintiff's facts prove correct at trial—that SAP knew of the '953 Patent and CSB's accusation of infringement, yet continued to market the Accused Products—a reasonable factfinder could conclude that subjective intent or recklessness existed.  Moreover,

although SAP had no affirmative obligation to obtain an opinion from counsel in order to avoid

liability for willful infringement, Seagate, 497 F.3d at 1371, its failure to obtain such an opinion

further tends towards willfulness under a totality of the circumstances analysis.  See

Spectralytics, Inc. v. Cordis Corp., 649 F.3d 1336, 1348 (Fed. Cir. 2011) ("[T]he failure to obtain

an opinion of counsel or otherwise investigate the patent situation can be considered, in the

totality of the circumstances.").  Given this evidence, and the lack of any contrary evidence from

Defendant, this Court concludes that Plaintiff has sufficiently established the subjective prong to

survive summary judgment review.

## IV.     CONCLUSION

The Court remains mindful of Defendant's overarching concern—identified at the outset

of its Motion for Summary Judgment of No Willful Infringement—that it does not wish to

proceed to trial with a threat of nearly $1 billion hanging over it.  Contrary to Defendant's

argument, however, that threat is not "legally baseless" and a trial on that issue is not "unjust."

(Def.'s Mot. Summ. J. 1.)  Indeed, as adequately demonstrated by Plaintiff's Motion, at least one

of Defendant's alleged "reasonable defenses" was deemed, as a matter of law, to be not

reasonable, and the remainder of its defenses require consideration by a factfinder after a full trial

on the merits.  This ruling does not, in any fashion, suggest that Defendant's non-infringement or

prior defenses defenses lack objective merit or are not "close" questions.  Rather, it is simply a

finding that Defendant has not met its burden of establishing no genuine issue of material fact as

to whether its reliance on those defenses was objectively reckless.  Should the evidence at trial

bear out that Defendant's reliance on its defenses was grounded in sound legal reasoning,

Defendant will have the opportunities afforded by the Federal Rules of Civil Procedure to seek

judgment as a matter of law at the close of evidence.  For purposes of the present Motion under Federal Rule of Civil Procedure 56, however, the Court finds that summary judgment is not warranted.