## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CSB-SYSTEM INTERNATIONAL INC.,   :
                                 :   CIVIL ACTION
    Plaintiff/Counterclaim Defendant,   :
                                 :
        v.                       :
                                 :   NO.  10-2156
SAP AMERICA, INC.,               :
                                 :
    Defendant/Counterclaim Plaintiff.   :

### MEMORANDUM

BUCKWALTER, S.J.                                              May 9, 2012

Currently pending before the Court are Plaintiff CSB-System International, Inc.'s ("CSB")

Motion for Summary Judgment of No Inequitable Conduct and No Unclean Hands, and Plaintiff

CSB's Motion to Strike.  For the following reasons, the Motion for Summary Judgment is granted

and the Motion to Strike is denied as moot.

## I.    STATEMENT OF FACTS[1]

The patent involved in this case is U.S. Patent No. 5,631,953 ("the '953 Patent"), which

claims a system or apparatus.  (Def.'s Mot. Summ. J., Ex. 2 ("953 Patent").)  In the simplest of

terms, the technology in this case concerns circuit arrangements of hardware and software that allow

the integration of speech (telephone systems) with data systems.  These systems permit agents in

customer service call centers to obtain information from their personal computer about the person

---

[1] Both the parties and the Court are well-aware of the operative facts in this case, as they have been set forth over the course of several prior opinions issued by the Court.  In lieu of repeating those facts, the Court simply incorporates by reference the factual synopses included in two of those prior opinions.  See CSB-Sys. Int'l v. SAP Am., Inc., No. Civ.A.10-2156, 2012 WL 1079986, at *15 (E.D. Pa. Apr. 2, 2012); CSB-Sys. Int'l v. SAP Am., Inc., No. Civ.A.10-2156, 2012 WL 1322894, at *15 (E.D. Pa. Apr. 17, 2012).

calling for assistance at the same time he or she takes the call.  The U.S. application which led to the '953 patent was filed on August 25, 1995.  The United States Patent & Trademark Office ("USPTO") allowed the claims as set forth in the '953 Patent.  Ultimately the '953 patent issued on May 20, 1997.

The accused products are the SAPphone Interface and the Integrated Communication Interface ("ICI") (collectively the "Accused Products"), manufactured by Defendant SAP America, Inc. ("SAP").  The SAPphone was first introduced to the market in 1998.  Subsequently, SAP developed the ICI, the successor product to SAPphone, and began to market it in 2003.

Plaintiff CSB brought the present patent action against Defendant SAP in this Court on May 11, 2010, alleging that the Accused Products infringe on the '953 Patent held by Plaintiff.  Due to the existence of several disputed claim terms, the parties proceeded to a one-day Markman hearing,[2] at which time each side offered a short tutorial and the testimony of an expert witness.  Thereafter, on July 27, 2011, the Court issued a lengthy opinion construing each of the disputed claims, but declining to rule on SAP's claims of indefiniteness until the summary judgment stage.

On April 2, April 17, and April 25, 2012, the Court respectively denied Defendants' Motions for Summary Judgment on Invalidity, Non-infringement, and No Willful Infringement.  On April 30, 2012, the Court granted Defendant's Motion for Partial Summary Judgment to Limit CSB's Damage Claim.  On May 1, 2012, the Court dismissed as premature Defendant's Motion for Summary Judgment as to CSB's Request for Injunctive Relief.  Finally, on May 2, 2012, the Court denied as moot five of CSB's Motions for Summary Judgment as to SAP's defenses.  The Court now turns its attention to the final pending summary judgment request—CSB's Motion for

---

[2]  See Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995).

Summary Judgment of No Inequitable Conduct and No Unclean Hands.  In addition, the Court

simultaneously considers Plaintiff's Motion to Strike Defendant's New Theory of Inequitable

Conduct.

## II.     STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual dispute is

"material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a

verdict in favor of the non-moving party.  Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it

believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas

Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  It is not the court's role to weigh the disputed evidence

and decide which is more probative, or to make credibility determinations.  Boyle v. Cnty. of

Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del.

Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all

reasonable inferences which may be drawn from it, in the light most favorable to the non-moving

party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United

States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358,

361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must

accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn

in his favor."  Anderson, 477 U.S. at 255.

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec., 475 U.S. at 586. "[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Moreover, the mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson, 477 U.S. at 249–50.

## III. DISCUSSION

The Motion currently before the Court presents a question regarding the viability of Defendant's inequitable conduct defense.[3] "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1285 (Fed. Cir. 2011). "This judge-made doctrine evolved from a trio of Supreme Court cases that applied the doctrine of unclean hands to dismiss patent cases involving

---

[3] In its Response to the Motion for Summary Judgment, Defendant clarifies, by way of footnote, that it is not pursuing its defense of unclean hands. Accordingly, the Motion as to this defense is denied as moot and Defendant shall be precluded from further pursuing this defense in this matter.

4

egregious misconduct." Id.  The burden of proving inequitable conduct lies with the accused infringer.  Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1365 (Fed. Cir. 2008). To successfully prove inequitable conduct, the accused infringer must present "evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the [PTO]." Cargill, Inc. v. Canbra Foods, Ltd., 476 F.3d 1359, 1363–64 (Fed. Cir. 2007) (citing Impax Labs., Inc. v. Aventis Pharm., Inc., 468 F.3d 1366, 1374 (Fed. Cir. 2006)).  "Further, at least a threshold level of each element—i.e., both materiality and intent to deceive—must be proven by clear and convincing evidence."  Star Scientific, 537 F.3d at 1365.  Even if the defendant meets this "elevated evidentiary burden as to both elements," the district court must still engage in a balancing of equities to determine if the applicant's conduct before the PTO was so egregious as to warrant holding the entire patent unenforceable.  Id.

In the present case, the Court's consideration of the inequitable conduct defense is complicated by the dual theories promulgated by Defendant.  In its Answer and Counterclaim, as well as subsequent discovery responses, Defendant claimed that the alleged inequitable conduct was committed by Gottfried Thomas, Ulrich Mergemann, Peter Schimitzek, and Michael Striker.  In its present Response to Plaintiff's Motion for Summary Judgment of No Inequitable Conduct, Defendant now claims that the inequitable conduct was perpetrated only by Mr. Peter Haussingen. For clarity of discussion, the Court considers each theory individually.

### A.   Inequitable Conduct by Mssrs. Thomas, Mergemann, Schimitzek, and Striker

Defendant's original theory of inequitable conduct appeared in its Answer and Counterclaim.  Defendant's Third Affirmative Defense stated that, "[t]he 953 patent is

unenforceable due to inequitable conduct before the United States Patent and Trademark Office ("USPTO") during prosecution of the application for the 953 patent." (Answer, Aff. Defense No. 3.) Defendant's Third Counterclaim then sought a declaratory judgment of unenforceability based on the inequitable conduct before USPTO during prosecution of the '953 Patent. (Countercl. ¶ 41.) As grounds for its inequitable conduct defense, Defendant argued that four individuals were associated with the filing and prosecution of the application leading to the '953 Patent: (1) Gottfried Thomas, one of the inventors of the '953 Patent; (2) Ulrich Mergemann, the other inventor of the '953 Patent; (3) Peter Schimitzek, CSB's founder, chairman, and CEO; and (4) Michael J. Striker, the attorney who prosecuted the '953 Patent application on behalf of the inventors and CSB. (Countercl. ¶ 45.) This group—repeatedly defined by Defendant as "the CSB prosecution group"—allegedly had a duty of candor and good faith in dealing with the USPTO, were aware of prior art that was material to the pending application leading to the '953 Patent, yet failed to disclose either the existence or materiality of the concealed prior art to the USPTO. (Id. ¶¶ 46–57.)

Plaintiff's current Motion seeks summary judgment on this defense, alleging that Defendant cannot prove intent to deceive, as required for its inequitable conduct claim. More specifically, it asserts that "[t]here is simply no evidence showing a deliberate plan by the inventors, the prosecuting attorneys or even anybody affiliated with CSB to deceive the USPTO." (Pl.'s Mem. Supp. Mot. Summ. J. 6.) It goes on to point out that the lead U.S. patent prosecutor, Michael Striker, testified that he was not aware of either of the two prior art references cited in foreign prosecutions and, if he had been made aware of them, he would have brought them to the USPTO's attention. (Id.) As such, the only evidence relevant to inequitable conduct actually contradicts an intent to deceive. (Id.)

In the face of Plaintiff's lengthy briefing, Defendant's Response remains silent.  Defendant effectively concedes that Mr. Striker did not commit inequitable conduct.  (Def.'s Resp. Opp'n Mot. Summ. J. 2; Def.'s Resp. Opp'n Mot. to Strike 2 ("SAP is . . . not alleging that Mr. Striker committed inequitable conduct.").)  Further, Defendant offers no mention, let alone argument, in support of its theory that Mssrs. Thomas, Mergemann, and Schimitzek had an intent to deceive the USPTO.  As the record shows no genuine issue of material fact on this issue—and given that Defendant has not explicitly withdrawn this defense—the Court grants the Motion for Summary Judgment of No Inequitable Conduct with respect to the members of the CSB prosecution group, as defined by Defendant in its Counterclaim.

> **B.** **Inequitable Conduct by Peter Haussingen**

Defendant's second theory of inequitable conduct—raised in its Response to the Motion for Summary Judgment—alleges that Peter Haussingen, the patent attorney for German company CSB-System GmbH, committed inequitable conduct attributable to Plaintiff.  (Def.'s Resp. Mot. Summ. J. 2.)  More precisely, Defendant argues that "Mr. Haussingen was subject to the duty of candor, knew about material prior art, and failed to provide that art to the U.S. counsel or the U.S. Patent Office."  (Id.)  Defendant then spends the remainder of its Response setting forth evidence in support of a *prima facie* case that, with deceptive intent, Mr. Haussingen withheld material prior art from the U.S. Patent Office during prosecution of the '953 Patent.  (Id. at 2–9.)

Presented with this new allegation, Plaintiff contends that "[i]nstead of opposing CSB's Motion on the only theory of inequitable conduct that it pled and disclosed during discovery, SAP has now concocted a new theory of inequitable conduct; one that has never before been disclosed." (Pl.'s Combined Mot. to Strike and Reply Supp. Mot. Summ. J. 1.)  Accordingly, it requests that the

Court either (a) strike this new theory; or alternatively (b) grant summary judgment because this new theory has no merit.  The Court takes each request separately.

### 1.  Motion to Strike Defendant's New Theory

"[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity" under Federal Rule of Civil Procedure Rule 9(b).  Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC, 350 F.3d 1327, 1344 (Fed. Cir. 2003).  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)."  Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1326–27 (Fed. Cir. 2009).  Rather, "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."  Id. at 1328.  Notably, only individuals can breach the duty of candor owed to the USPTO and thus give rise to a finding of inequitable conduct.  Avid Identification Sys, Inc. v. Crystal Import Corp., 603 F.3d 967, 974 n.1 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 909 (2011).  As such, in order to state a claim for inequitable conduct, a pleading must "name the specific individual associated with the filing or prosecution of the application . . . who both knew of the material information and deliberately withheld or misrepresented it."  Exergen, 575 F.3d at 1329; see also Sanders v. Mosaic Co., 418 F. App'x 914, 919 (Fed. Cir. 2011) ("At the pleading stage the proponent of the inequitable conduct theory need only plead facts supporting a reasonable inference that *a specific individual* knew of the misrepresentation and had the specific intent to deceive the PTO.") (emphasis added); Delano Farms Co. v. Cal. Table Grape Comm'n, 655 F.3d 1337, 1350 (Fed. Cir. 2011) ("A charge of inequitable

conduct based on a failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may reasonably infer that *a specific individual* both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO.") (emphasis added).  Ultimately, "[w]hether inequitable conduct has been pleaded with particularity under Rule 9(b) is a question governed by Federal Circuit law."  Exergen, 575 F.3d at 1318.

In the present case, Defendant's Counterclaim identified only four individuals as perpetrating the alleged inequitable conduct: Mssrs. Thomas, Mergemann, Schimitzek, and Striker. Mr. Haussingen was never mentioned in any pleading.  Moreover, during written discovery, Defendant failed to disclose any allegations regarding Mr. Haussingen's purported behavior.  For example, Plaintiff directed an interrogatory to Defendant asking that it "[i]dentify each event . . . which Defendant contends pertains to invalidity or unenforceability of any claim of the '953 Patent, and identify the person(s) believed to be knowledgeable as to the same."  (Pl.'s Mot. Summ. J., Ex. 3, Interrogatory No. 4.)  In its response, dated October 21, 2010, Defendant stated, in pertinent part, as follows:

> SAP also responds that the 953 Patent is unenforceable due to inequitable conduct.  SAP's investigation of this matter is continuing, and it reserves the right to supplement its responses to this interrogatory as discovery proceeds.
> . . .
> The inventors named on the 953 Patent (Messrs. Gottfried Thomas, Ulrich Mergemann), CSB's founder, chairman and CEO (Dr. Peter Schimitzek), and/or the attorney who prosecuted the 953 patent on behalf of the patent application inventors and CSB (Mr. Michael J. Striker) (collectively "the CSB prosecution group"), were associated with the filing and prosecution of the application leading to the 953 patent. During prosecution of the application leading to the 953 patent, each member of the CSB prosecution group had a duty of candor and good faith in dealing with the USPTO, including a duty to disclose to the USPTO all information known to them to be material to patentability of the claims of the 953 patent.

During the pendency of the patent application leading to the 953 patent, one or more members of the CSB prosecution group knew of information that, under 35 U.S.C. §§ 102 and 103, was highly material to the patentability of the claims therein.

. . . However, despite their duty of candor, and with intent to deceive, none of the members of the CSB prosecution group ever disclosed the concealed prior art to the USPTO. Consequently, the 953 patent is unenforceable because it was procured through inequitable conduct on the USPTO.

(Id. at Resp. to Interrog. No. 4.)  At no point in this Interrogatory Response, or any supplementation of this Response, did Defendant mention Mr. Haussingen's name.

In an effort to counter this evidence, Defendant argues that it "adequately disclosed that CSB's German counsel was involved with this inequitable conduct during the course of discovery." (Def.'s Resp. Opp'n Mot. to Strike 2.)  As support for this contention, it cites to two discovery responses.  Initially, at the very end of its Response to the aforementioned Interrogatory, SAP stated:

SAP identifies the following persons believed to be knowledgeable about the foregoing: Gottfried Thomas, Ulrich Mergemann, Dr. Peter Schimitzek, Mr. Michael J. Striker, **those that prosecuted the related German patents**, and those that were involved with the various opposition proceedings involving the related European patent and German patents.

(Def.'s Resp. Opp'n Mot. to Strike, Ex. 1 (emphasis added).)  Moreover, in its Second Amended Initial Disclosures, filed May 23, 2011, SAP identified "Peter Haussingen" as a person having information that SAP may rely upon to support its claims or defenses in this case, explaining:

Mr. Haussingen was involved in prosecution of the 953 patent and the German and European patents in the same family of the 953 patent.  He is believed to have knowledge of the inequitable conduct committed during prosecution of the application maturing into the 953 patent and discussions with SAP AG regarding licensing the patents in the 953 patent.

(Id., Ex. 2.)

Such citations fail to satisfy Defendant's obligation to plead with particularity the "who" of its inequitable conduct defense for two reasons.  First, the statement in Defendant's Responses to

10

Interrogatories fails to specifically name Mr. Haussingen.  Rather, it merely states that "those that prosecuted the related German patents" would be knowledgeable about the inequitable conduct defense.  Using such broad labels in lieu of identifying specific individuals does not comport with the particularized pleading requirements.  See, e.g., Exergen, 575 F.3d at 1329 (holding that pleading's reference generally to "Exergen, its agents and/or attorneys," with no reference to any specific individual, failed to identify the "who" of the material omissions and misrepresentations); Teva Neurosci., Inc. v. Watson Labs., Inc., No. Civ. A.10-5078, 2011 WL 741250, at *3 (D.N.J. Feb. 24, 2011) (noting that mere reference in pleading to "the applicants" fails to sufficiently allege the specific individuals associated with the inequitable conduct, even when party attempts to clarify that pleading by way of subsequent briefing); Correct Craft IP Holdings, LLC v. Malibu Boats, LLC, No. Civ.A.09-813, 2010 WL 598693, at *3 (M.D. Fla. Feb. 17, 2010) (holding that simply alleging that the "Correct Craft Prosecutors" had knowledge of facts that they failed to disclose to the PTO was insufficient to allege the "who" requirement where no specific prosecutors were named); SynQor, Inc. v. Artesyn Techs., Inc., No. Civ.A.07-497, 2010 WL 3860129, at *2 (E.D. Tex. Sept. 9, 2010) (holding that "[a]n inequitable conduct pleading must identify specific individuals, not corporations or labels such as 'attorneys,' that owed a duty of candor to the PTO and breached that duty").  Moreover, neither of the foregoing disclosures suggest, either explicitly or implicitly, that Mr. Haussingen was actually one of the perpetrators of the inequitable conduct. Instead, they simply identify Mr. Haussingen as a person with knowledge of the inequitable conduct, without ever averring that he substantively participated in the prosecution of the '953 Patent, had a duty of candor to the USPTO, had knowledge of the prior art, and had specific intent to deceive the USPTO.

Second, even assuming *arguendo* that such discovery responses could conceivably be construed to alert Plaintiff to Defendant's new contention that Mr. Haussingen committed inequitable conduct, Defendant failed to amend its Answer and Counterclaims to set forth this new theory.  As set forth above, "inequitable conduct, while a broader concept that fraud, must be ***pled*** with particularity." Cent. Admixture Pharm. Servs, Inc. v. Adv. Cardiac Solutions, P.C., 482 F.3d 1347, 1356 (Fed. Cir. 2007) (emphasis added) (quoting Ferguson Beauregard/Logic Controls, Inc. v. Mega Sys., LLC, 350 F.3d 1327, 1344 (Fed. Cir. 2003)).  Defendants' pleadings must "give notice to the other party of the facts on which the defense is premised." Id. at 1357.  "Without such a pleading, a party may not raise, as an affirmative defense, inequitable conduct in a motion for summary judgment." Lab. Skin Care, Inc. v. Ltd. Brands, Inc., No. Civ.A.06-601, 2009 WL 2524577, at *2 (D. Del. Aug. 17, 2009).  Repeatedly, courts have declined to allow a defendant to assert a new theory of inequitable conduct if the answer and counterclaims asserted a different theory of inequitable conduct than that relied upon in summary judgment proceedings.  See, e.g., id. at *3–4 (declining to consider new theory of inequitable conduct where defendant's answer "does not support the particular theory of inequitable conduct in Defendants' Motion for Summary Judgment"); ChemFree Corp. v. J. Walter, Inc., No. Civ.A.04-3711, 2008 WL 3884365, at *2 (N.D. Ga. June 10, 2008) (finding that "Defendants may not now change their theories of inequitable conduct at the final stages of this litigation in an effort to avoid summary judgment.  Therefore, the Court will only consider Defendants' original allegations of inequitable conduct as pleaded in their Amended Answer and Counterclaims"); Inline Connection Corp. v. AOL Time Warner, Inc., 237 F.R.D. 361, 367–68 (D. Del. 2006) (finding that, even assuming defendants did not have all necessary information to plead new theory of inequitable conduct when filing Second Amended

12

Answer, the defendants had an obligation to file a Third Amended Answer to include new theory of inequitable conduct as soon as they had that information; even though previous Answer alleged inequitable conduct, their failure to amend their Answer to include new theory precluded their reliance on that theory); Heraeus Electro-Note Co. v. Midwest Instrument Co., Inc., No. Civ.A.06-355, 2006 WL 3004877, at *6 (E.D. Pa. Oct. 18, 2006) (finding that the defendant's best mode theory of inequitable conduct, as pled, failed to satisfy Rule 9(b) because none of the assertions contained in the defendant's response to the plaintiff's motion to dismiss were pled in the amended counterclaims).

In this case, Defendant makes no attempt to argue that its theory of inequitable conduct based on the conduct of Mr. Haussingen was raised anywhere in its Answer or Counterclaims. Moreover, upon careful consideration of the record, the Court can easily infer that Defendant had sufficient information regarding Mr. Haussingen's alleged involvement at least eight months prior to the filing of the present Motion for Summary Judgment.  For example, in support of its inequitable conduct theory, Defendant repeatedly, and exclusively, cites to the deposition of CSB U.S. attorney Michael Striker, which occurred on May 11, 2011.  Further, Plaintiff's discovery responses, filed on October 21, 2010, specifically identified Peter Haussingen as the attorney who handled the German applications of the related patents and recognized the ECMA/TR/52 as an alleged prior art reference.  (Pl.'s Mot. Summ. J., Ex. 7, Resp. to Interrog. No. 2.)  Finally, the two discovery responses cited by Defendant in support of their argument that they previously disclosed their inequitable conduct theory involving Mr. Haussingen were dated October 21, 2010 and May 23, 2011.  Yet, at no point in this litigation did Defendant ever move to amend its Answer or Counterclaims to specifically plead this theory.  Rather, Defendant sprung this new argument on

Plaintiff in its Response Brief—filed on February 10, 2012—with no explanation for its failure to seek leave to conform its pleadings to the evidence in the at least eight months that it possessed the relevant information.  Accordingly, the Court finds that Defendant's new inequitable conduct theory fails to satisfy Federal Rule of Civil Procedure 9(b).

In a last-ditch effort to avoid the striking of its inequitable conduct defense, Defendant argues that, under Federal Rule of Civil Procedure 37(c)(1), the Court need not preclude the defense if Defendant's failure to provide information about that defense was harmless.  See Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.").  It goes on to assert that "CSB does not articulate a single instance of time or money that it unnecessarily expended in defending the inequitable conduct defense that was set forth in SAP's interrogatory answer; nor does CSB assert that it would be prejudiced in any way from defending what it calls 'SAP's new theory.'" (Def.'s Reply Br. 3.)

The Court disagrees.  Plaintiff has clearly spent time and money to rebut the inequitable conduct defense as pled by Defendant and as described in discovery.  Indeed, Plaintiff filed a lengthy summary judgment motion on the original inequitable conduct theory, only to be casually met with a new theory argued for the first time in Defendant's Response to that Motion.  Moreover, despite the fact that the perpetrating individual's state of mind is highly relevant to an inequitable conduct defense, neither party has deposed Mr. Haussingen.[4]  At this juncture, fact and expert

_____

[4]  In its Reply Brief, Defendant argues that "CSB prohibited SAP from obtaining relevant information relating to the alleged inequitable conduct defense . . . [because] [d]espite SAP's request, CSB would not make either Dr. Schimitzek . . . or Mr. Haussingen appear for a deposition in this case in response to SAP's Notices."  (Def.'s Reply Br. 4.)  Given the parties'

discovery is closed, the case stands on the eve of trial, and Plaintiff has no opportunity to pursue

further discovery on the issue or file a new summary judgment motion.  Clearly, the invocation of a

new inequitable conduct theory at this time will not only be prejudicial to Plaintiff,[5] but will require

history in discovery, the Court is unpersuaded by this argument.  When Plaintiff first sought to depose foreign individuals affiliated with SAP, Defendant notified Plaintiff that its depositions were improperly noticed and would not occur without invocation of the proper procedures under the Hague Convention.  (Pl.'s Reply Supp. Mot. Summ. J. Sufficient Enablement, Ex. 6 at 1.)  The Court agreed and, on April 5, 2011, ordered that Plaintiff either use the Hague Convention or go to London for the depositions.

Two and a half months later, SAP served its deposition notices for deposition of non-party German witnesses to occur in Philadelphia, including Dr. Schimizek and Mr. Haussingen.  As Mr. Haussingen is not an employee of any CSB affiliate, Plaintiff had no custody or control over him.  In the face of these deposition notices, Plaintiff responded in like form to Defendant's responses, stating: "As you are aware, these individuals are not employees of CSB Systems International, Inc. and reside outside of the United States.  As such these deposition notices are invalid."  (Def.'s Resp. Opp'n Mot. to Strike, Ex. 3.)

In light of these facts, Defendant's argument that Plaintiff prevented the deposition of Mr. Haussingen from occurring is nothing short of disingenuous.  Following Defendant's own precedent, Plaintiff simply declined to make a foreign, non-party, non-employee—and an individual not even implicated in any inequitable conduct at the time—available for a deposition without Defendant's use of the proper procedures under the Hague Convention.  Had Defendant truly wished to implicate Mr. Haussingen in the inequitable conduct defense, it could have, at its own expense, invoked the Hague Convention, traveled to Europe for depositions, and/or sought assistance from the Court.

[5] Defendant cites the case Braun Corporation v. Vantage Mobility, International, LLC, No. Civ.A.06-50, 2010 WL 403749 (N.D. Ind. Jan. 27, 2010) for the proposition that where a plaintiff has failed to demonstrate that it will suffer undue prejudice in allowing the addition of an inequitable conduct defense that was closely tied to the facts of the previously disclosed invalidity defense, an amendment of the pleadings will be allowed.

Braun is completely inapposite.  In that matter, the defendant had moved to amend its answer to allege a new inequitable conduct theory.  Id. at *1.  The case had not been set for trial and the plaintiff had been on notice, months prior to the close of discovery, that defendant intended to allege the inequitable conduct defense.  Id. at *4.  Because plaintiff had failed to meet its burden of showing undue prejudice from the proposed amendment, the court found that leave to amend should be granted.  Id.

In this case, on the other hand, Defendant never moved to amend its Answer to allege its new inequitable conduct theory.  Rather, it simply set forth this theory in response to Plaintiff's Motion for Summary Judgment on the original theory of inequitable conduct.  This Response was filed on February 10, 2012, well after the close of discovery, during the course of summary judgment proceedings, and on the eve of an already scheduled trial.  Moreover, unlike a Rule 15

the expenditure of additional judicial resources.  Accordingly, the Court is inclined to grant the

Motion to Strike.[6]  As discussed below, however, the Court grants Plaintiff's Motion for Summary

Judgment on this theory, thus rendering the Motion to Strike moot.

> **2.      Whether Defendant Has Established that Mr. Haussingen Was
> Substantively Involved in the Preparation or Prosecution of the
> Application for the '953 Patent**

Assuming the new inequitable conduct defense could proceed, however, the Court harbors

significant reservations about Defendant's ability to succeed on such a defense.  As such, in lieu of

simply striking the defense, the Court will grant summary judgment on it in favor of Plaintiff.

Applicants for patents have a duty "to prosecute patent applications in the PTO with candor,

good faith, and honesty."  See Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995)

(citation omitted).  This duty of candor extends "throughout the patent's entire prosecution history."

Fox Indus., Inc. v. Structural Pres. Sys., Inc., 922 F.2d 801, 803 (Fed. Cir. 1990).  Under the

applicable federal regulations, the duty of candor applies to "[e]ach individual associated with the

filing and prosecution of a patent application . . ." 37 C.F.R. § 1.56.  In this context, the regulations

go on to state that "[i]ndividuals associated with the filing or prosecution of a patent application"

include:

(1)      Each inventor named in the application;

---

motion for leave to amend, where the non-moving party bears the burden of showing prejudice,
Federal Rule of Civil Procedure 37(c)(1) shifts the burden of showing the harmlessness of the
new theory to the party seeking to use that information.  Defendant has not met this burden.

[6] Nor would the Court grant any motion for leave to amend filed by Defendant at this
point.  Even when faced with the hard facts that it never previously asserted this theory of
inequitable conduct, Defendant has failed to admit its error or seek leave to amend.  Any attempt
to do so at this juncture would be denied on the grounds of bad faith, undue prejudice, and undue
delay, particularly in light of the fact that trial in this matter is set to proceed next month.

(2)      Each attorney or agent who prepared or prosecutes the application; and

(3)      Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application.

37 C.F.R. § 1.56(c); see also Molins, 48 F.3d at 1178 n.6.  With respect to the last category, if an individual, other than the attorney, agent, or inventor, is substantively involved in the preparation or prosecution of an application and fails to comply with his duty of candor, then his misconduct is charged to the patent applicant and the patent is held unenforceable.  Avid Identification Sys., Inc. v. Crystal Import Corp., 603 F.3d 967, 973 (Fed. Cir. 2010).

An individual is substantively involved in the patent application process where his participation "relates to the content of the application or decisions related thereto" and "the involvement is not wholly administrative or secretarial in nature."  Id. at 974.  "This duty of candor applies equally to the applicant and his attorney, . . . even where a foreign attorney has primary responsibility for the prosecution of the application and acts only through a correspondent attorney in the United States . . . .  Thus it constitutes fraud or inequitable conduct for the foreign attorney to withhold from his U.S. correspondent information as to prior art more relevant than that cited by the PTO."  Gemveto Jewelry Co., Inc. v. Lambert Bros., Inc., 542 F. Supp. 933, 938–39 (D.C.N.Y. 1982).  Nonetheless, simply requesting that a company or firm prepare patent applications at an appropriate time, without actual involvement in the prosecution process—such as reviewing the application, the prosecution history, or the references disclosed to the patent office—does not rise to the level of substantial involvement.  Janssen Pharm. N.V. v. Mylan Pharms., Inc., 456 F. Supp. 2d 644, 675–76 (D.N.J. 2006).

In the present case, it is undisputed that Mr. Haussingen is neither the inventor of the

invention underlying the '953 Patent nor the prosecuting attorney for the '953 Patent on behalf of

CSB-System International, Inc.  Accordingly, the onus falls on Defendant to prove that he was

"substantively involved" with the preparation or prosecution of the application to the USPTO.

Defendant's Response in Opposition, however, is woefully deficient on this point.  As its sole

evidence regarding Mr. Haussingen's involvement, Defendant cites strictly to the deposition of

Michael Striker, CSB's U.S.-based attorney responsible for prosecuting the '953 Patent in the

United States.  Mr. Striker stated that Mr. Haussingen retained his U.S. firm to prosecute the '953

Patent:

> Q.    Would you consider Mr. Haussingen to have been a party involved in any
>        respect in the prosecution of the patent application leading to the '953 patent?
> A.    Yes.
> Q.    And how would you characterize his involvement?
> A.    If my understanding is correct, he is the German patent professional who
>        entrusted my firm to prosecute the application.

(Def.'s Resp. Opp'n Mot. Summ. J., Ex. A, Dep. of Michael Striker ("Striker Dep."), 36:6–25, May

11, 2011.)  As such, Mr. Striker regarded both CSB and Mr. Haussingen as his client.  (Id. at

49:6–11.)  In addition, Mr. Striker surmised that his firm made Mr. Haussingen aware of the duty to

disclose:

> Q.    And do you know whether Mr. Haussingen was made aware of the duty of
>        disclosure in the United States?
> A.    I think it's fair to conclude that he was made aware of the duty of disclosure.
> Q.    Was he aware of it, to you knowledge, between 1995 and 1997?
> A.    I have not—I'm not able to definitively answer your question.  I don't know
>        what he was aware of.  I can only testify as to what I believe I and my firm did
>        to make him aware.
> Q.    What did you and your firm do to make him aware?
> A.    Well, we have a standard procedure in every case to inform the client of the duty
>        of disclosure at the outset of prosecution.
> Q.    And how is that done?
> A.    We include in our covering letter one or two paragraphs that explain the duty of
>        disclosure and the obligation to produce material—material which is pertinent

to the prosecution of the application.

. . .

Q. And was that done in this particular case, to your knowledge

A. I cannot definitively say, because I haven't seen the file. I will say that I would assume that that has taken place because it was our policy and is our policy to do that in every case.

Q. So you have no reason to believe that it wasn't followed in this case; is that correct?

A. That would be correct.

Q. And is it fair to say it was likely followed in this case?

A. It was very likely followed in this case.

. . .

Q. All right. And would that letter have notified the recipient that they should disclose to our firm any prior art of which they are aware that is material to the invention to you so that it could be disclosed to the patent office?

A. That would be correct.

Q. And roughly—what was the practice in terms of timing? When would this letter typically have gone out?

A. At the outset of prosecution.

. . .

Q. Now, to whom in this case would the letter have been directed? Would it have been directed to Mr. Haussingen?

A. It would have been directed to the firm, which entrusted us with the prosecution of the application. If that was Mr. Haussingen, then it would have been directed to him.

(Id. at 37:1–41:3.)

Q. And is it your understanding based on what you told me earlier about your firm's practice of advising clients about their duty of disclosure that Mr. Haussingen was aware that if there was a reference or references that were considered to be material to the patentability of a pending United States application related to something that he was prosecuting in Germany, he should have disclosed it to you?

. . .

A. Yes.

Q. And would that have included, for example, references that arise in connection with oppositions in European proceedings?

A. Yes.

(Id. at 57:3–18.) Finally, Defendant asserts that Mr. Haussingen was involved with the prosecution

of the German patent in the same family as the '953 Patent, and was aware of some prior art that

was allegedly related to the invention of the '953 Patent.  (Pl.'s Mot. Summ. J., Ex. 7, Resp. to Interrogatory No. 2.)

Notably, Defendant's cited evidence is devoid of any allegations that Mr. Haussingen substantively participated in the prosecution of the '953 Patent, such that he was bound by the duty of candor about which he was allegedly notified.  Despite Defendant's repeated citation of Mr. Striker's deposition as evidence for Mr. Haussingen's involvement and intent, Mr. Striker admitted that he had never spoke to Mr. Haussingen.[7]  (Striker Dep. 41:15–17.)  Moreover, Mr. Striker indicated that Mr. Haussingen did not review any of the documents filed in connection with the application for the '953 Patent:

> Q.   In accordance with your normal practice in the time frame from 1995 to 1997, would Mr. Haussingen have been asked to approve any preliminary amendment before you filed it?
> A.   There are times when we will send a preliminary amendment for, or any kind of amendment for approval.  Typically we would not do so.
> Q.   Do you have any reason to believe that it was done so in this case?
> A.   I don't know whether it was sent for approval or not.

---

[7]  In its Response, Defendant argues that "Mr. Stryker [sic] testified that Mr. Haussingen was the only one with whom Mr. Stryker [sic] communicated about the '953 patent application's prosecution."  (Def.'s Resp. Opp'n Mot. Summ. J. 3.)  Defendant's evidentiary citation, however, does not substantiate this point.  Rather the cited portion of Mr. Striker's transcript states:

> Q.   In the time frame from 1994 to 1997 . . . [w]ould you have communicated with anyone other than Mr. Haussingen at his firm?
> . . .
> A.   Possibly.  I don't recall.
> Q.   By your recollection, Mr. Haussingen is the only person you communicated with?
> A.   In that time frame that you mentioned, my recollection is that he was a sole practitioner.

(Striker Dep. 56:18–57:2.)  As noted above, however, Mr. Striker explicitly admitted to never talking to Mr. Haussingen.  At best, then, this testimony suggests that Mr. Striker was unsure with whom he communicated with regarding the '953 Patent prosecution.

. . . [Mr. Striker reviews some documents]

Q.      Okay.  So is there anything to indicate that Mr. Haussingen saw it [the draft
         patent application] before it was filed?
A.      No.
Q.      So is it reasonable to conclude that this is a preliminary amendment that was
         made by your office, filed in the U.S. and then sent to Mr. Haussingen?
A.      Based upon Exhibits 9 and 7 and what you've shown to me, that would
         appear to be the case.

(Id. at 65:12-68:11.)  Indeed, the sole inferences that can be drawn from the evidence cited by

Defendant is that, based on the admittedly shaky recollection of Mr. Striker, Mr. Haussingen was a

German attorney who (a) was involved with patent proceedings in Germany for the invention

underlying the '953 Patent; (b) referred the prosecution of the U.S. patent to Mr. Striker's firm on

behalf of CSB-System GmbH; (c) was possibly told about "the"—but not "his"—duty of candor

existing in U.S. patent law; and (d) received a copy of the application after it was filed.  Noticeably

absent from Defendant's argument is any evidence that Mr. Haussingen prepared filings, reviewed

application documents, reviewed prior art references, or regularly consulted—or corresponded at

all—with American counsel.  Nor does Defendant produce any statements or testimony from Mr.

Haussingen, any copies of correspondence between Mr. Striker and Mr. Haussingen, or any

documents filed with the USPTO on which Mr. Haussingen was copied.  In short, nothing in the

evidence suggests Mr. Haussingen's role in the '953 Patent extended beyond administrative or

secretarial tasks to become "substantive" as defined by the Federal Circuit.

        As noted above, due to the deep ramifications of a finding of inequitable conduct, Defendant

faces an elevated evidentiary burden of proving each element of an inequitable conduct defense by

clear and convincing evidence.  Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357,

1365 (Fed. Cir. 2008).  Defendant's cursory briefing, however, falls far short of establishing that any

reasonable juror could find proof of the primary element in that defense—that Mr. Haussingen substantively participated in the prosecution of the '953 Patent such that he had a duty of candor to the USPTO. Absent such a duty, any alleged failure by him to disclose prior art does not constitute inequitable conduct that may be imputed to Plaintiff. Accordingly, the Court grants summary judgment on this theory.

**IV.    CONCLUSION**

Despite Defendant's efforts to weave together a series of inequitable conduct allegations in the hopes of invalidating the '953 Patent, the Court finds that this defense cannot survive the summary judgment stage of review. As to Defendant's theory that Mssrs. Thomas, Mergemann, Schimitzek, and Striker committed inequitable conduct, Defendant's absence of response as to the first three individuals and explicit concession that the fourth individual perpetuated no such conduct requires a grant of summary judgment. As to Defendant's theory that Mr. Haussingen was responsible for inequitable conduct, the Court concludes that Defendant never properly pled this theory in its Answer and Counterclaims, and never otherwise put Plaintiff on notice of this theory through discovery. Accordingly, it cannot now rely on it in an effort to defeat Plaintiff's Motion for Summary Judgment. Moreover, even allowing this theory to proceed, the Court finds that Defendant has failed to make the preliminary showing that Mr. Haussingen was "substantively involved" in the preparation or prosecution of the application for the '953 Patent such that he had a duty of candor to the USPTO. As such, the Court must grant summary judgment on this theory as well.